UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-23129-CIV-DPG

ROBERTO ALVAREZ and all others )
similarly situated under 29 U.S.C. 216(b), )
)
Plaintiff, )
vs. )
)
LOCURA MARINA INC, )
JOSE VALERA, )
DEBRA BARRIENTOS, )
)
Defendants. )
_____ )

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW the Plaintiff, through counsel, pursuant to Fed.R.Civ.P. Rule 56 and SDLR 7.5, and moves for Partial Summary Judgment as follows:

**INTRODUCTION**

1. This matter sounds under the Fair Labor Standards Act and Florida law, and includes counts for overtime/minimum wages, retaliation and civil theft/conversion.

2. Plaintiff moves for partial summary judgment on the following points: (1) Defendants should not be permitted to claim a tip credit regarding the minimum wage allegations; (2) Defendant should not be permitted to assert the 7(i) retail commission exemption as to the overtime claim.

3. As discussed in more detail below, throughout the case at bar, Defendants have raised the affirmative defense of the "tip credit", however, this Court granted leave for Defendants to also allege the 7(i) retail exemption. However, Defendants are unable to establish entitlement to the tip credit as to the minimum

1

wage claim, which also negatively impacts their 7(i) defense to the ovetime claim that they are not entitled to claim.

## MEMORANDUM OF LAW

A.  Summary Judgment Standard.

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary judgment is to be granted as a matter of law. *Hoffman v. Allied Corp., et al.,* 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the nonmoving party…." *Hoffman v. Allied Corp., et al.,* 912 F.2d at 1383.  *See also, Beal v. Paramount Pictures Corporation,* 20 F.3d 454, 459 (11th Cir. 1994)("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County,* 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006)(in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact….")

B.  The Tip Credit.

The burden is on the Defendants to demonstrate they are entitled to the tip-credit. *See, Melton v. Round Table Restaurants, Inc.,* 1971 U.S. Dist. LEXIS 10887, *10 (N.D. Ga. 1971), *citing, Walling v. General Industries Co.,* 330 U.S. 545 (1947); *Wirtz v. C & P Shoe Corp.,* 336 F.2d 21 (5th Cir. 1964).  In the case at bar, the defense is unable to fulfill its burden to demonstrate Defendants are entitled to the tip credit for the reasons set forth below.

"Through a practice known as taking a "tip credit," employers may pay tipped employees a cash wage equal to the applicable statutory rate for tipped employees, so long as the wages paid combined with the employees tips add up to at least the minimum wage. 29 U.S.C. § 203(m). The effect of the tip credit is that the employer is allowed to credit a portion of an employee's tips towards its minimum wage obligation by using the tips to make up the difference between the lower tipped employee rate and the standard minimum wage that would otherwise be owed. *See Fast v. Applebee's Intern., Inc., supra.*" *Dominguez v. Quigley's Irish Pub, Inc.,* 790 F. Supp. 2d 803, 818 (N.D. Ill. 2011)(emphasis). Consequently, if an employer wishes to claim the tip credit, it is mandatory that an employee at least be paid minimum wages for all hours when the tips are factored into the hourly wage. Such language in *Dominguez* is a reference to the express language of 29 U.S.C. 203(m)(2) which mandates that the employee at least be paid an "amount [that] is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title." In the case at bar, Defendants are not permitted to claim the tip credit if they cannot demonstrate the Plaintiff was paid at least the equivalent of the minimum wage rate for his hours worked pursuant to section 206 (when Plaintiff's tips are factored in along with his hourly rate paid by the Defendants).

Defendant Barrientos admitted Defendants had no system in place to track Plaintiff's tips, to ensure he was paid at least minimum wages for his hours. Barrientos Deposition (1/11/16), P41, L1-8. Plaintiff states in Para. 15 of his Affidavit that "Defendants had no system and/or policy in place to monitor the amount of tips I was

receiving on a daily and/or weekly basis to ensure that I was being paid at least minimum wage per hour."

With respect to time records, Barrientos claimed the sheet "unfortunately" shows the time that all personnel worked with the Plaintiff; Barrientos claimed that, to make it "easier" "all the employees would use" Plaintiff's code and even Barrientos herself would "input" the code. As to Plaintiff, Barrientos testified "that he never did clock-in or clock-out". Barrientos Deposition (1/11/16), P37, L2-23. Thus, Plaintiff cannot be identified in the records because "other people used his number." Deposition (1/11/16), P38, L1-8. Plaintiff states in Para. 17 of his Affidavit that "Defendants failed to maintain time records and did not require me to keep track of the total hours I worked per shift." Barrientos admitted that on the days Plaintiff did work more than (40) hours in a week, he was not paid overtime wages "[b]ecause the salary for waiters is calculated salary plus tips." Deposition (1/11/16), P40, L1-17.

"Since Sec 3(m) is not an exemption from the MW [minimum wage], but merely allows the employer to claim up to 40 percent of the MW as tip credit, the employer is responsible for ascertaining that the MW provisions are complied with in compensating "tipped employees." *Driver v. AppleIllinois, LLC*, 06 C 6149, 2012 WL 3716482 (N.D. Ill. Aug. 27, 2012)(emphasis added).

Regarding the tip credit, "[s]ince Sec 3(m) is not an exemption from the MW [minimum wage], but merely allows the employer to claim up to 40 percent of the MW as tip credit, the employer is responsible for ascertaining that the MW provisions are complied with in compensating "tipped employees." *Driver v. AppleIllinois, LLC*, 06 C 6149, 2012 WL 3716482 (N.D. Ill. Aug. 27, 2012)(emphasis added). In the case at bar,

Barrientos admitted Defendants had no system in place to track Plaintiff's tips, to ensure he was paid at least minimum wages for his hours. Barrientos Deposition (1/11/16), P41, L1-8. Plaintiff states in Para. 15 of his Affidavit that "Defendants had no system and/or policy in place to monitor the amount of tips I was receiving on a daily and/or weekly basis to ensure that I was being paid at least minimum wage per hour." Defendants have failed to meet their burden to establish they are entitled to assert the tip credit. *See, Melton, Walling* and *Wirtz, supra.* Defendants maintained no system to ensure and track that Plaintiffs' wages paid combined with his tips added up to at least the minimum wage in violation of 29 U.S.C. § 203(m).

Also, "[w]here management employees participate in a tip pool, the pool is invalid. *See Ayres v. 127 Restaurant Corp.,* 12 F.Supp.2d 305, 308–09 (S.D.N.Y.1998) (tip pool violated FLSA where general manager, who had authority to suspend, hire and fire employees and analyze payroll costs, was allowed to participate in the pool)." *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 652 (N.D. Ill. 2007). "The FLSA expressly prohibits employers from participating in employee tip pools. "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Place Rest., Inc.,* 246 F.Supp.2d 220, 230 (S.D.N.Y.2002); *Wajcman v. Investment Corp. of Palm Beach,* No. 07–80912–CIV, 2008 WL 783741, *3 (S.D.Fla. March 20, 2008) ("The theory here is that employees who exercise substantial managerial authority over the day to day operations of the business are functionally the 'employers' themselves"). Where employers participate in a tip pool, the pool is invalid. *See Ayres v. 127 Restaurant Corp.,* 12 F.Supp.2d 305 (S.D.N.Y.1998) (tip pool violated

5

FLSA where general manager, who had authority to suspend, hire and fire employees and analyze payroll costs, was allowed to participate in the pool)." *Strange v. Wade*, 1:09-CV-00316, 2010 WL 3522410 (S.D. Ohio Sept. 8, 2010).  In Para. 11 of his Affidavit, Plaintiff states that "Also, during the time that I worked for Defendants as a waiter, often I witnessed the individual Defendant, Debra Barrientos, walking around the restaurant and physically taking tip cash money left on the tables from customers.  The individual Defendant would keep for herself the cash monies received over and above the 18% charged to the customers."  Such is another reason to disallow any tip credit in this matter.

Also, Plaintiff was not provided legally sufficient notice to permit Defendants to claim the tip credit.  *See*, *Martin v. Tango's Restaurant, Inc., et al.,* 969 F.2d 1319 (1st Cir. 1992); *Reich v. Chez Robert, Inc.,* 28 F.3d 401, 404 (3rd Cir. 1994).   Pursuant to *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294 (6th Cir. 1998) and *Chan v. Triple 8 Palace, Inc.,* 2006 WL 851749 (S.D.N.Y. 2006) it may be argued that it is enough to "inform" employees of the credit and that no "magic words" are required.  In *Martin*, the First Circuit found it to be crucial that "the minimum wage or tip credit was never mentioned to the waiters…." *Martin*, 969 F.2d at 1323.  The Court noted that it was not suggested "that the waiters knew anything of the minimum wage laws or defendants' intention to claim a tip credit against their obligations." *Id*.  Thus, the court reversed the district court and ordered a recomputation "with no tip credit allowed." *Id*.  The Third Circuit noted that the tip credit is barred with regard to an "employer who failed to explain provisions of section 3(m) to employees, even though employer acted in good faith."  *Reich v. Chez Robert, Inc.,* 28 F.3d 401, 404 (3rd Cir. 1994), *citing, Bonham*

*v. Copper Cellar Corp.*, 476 F. Supp. 98, 101-102 (E.D. Tenn. 1979).  As set forth in Plaintiff's Statement of Material Facts, Defendant Barrientos admitted at her first deposition that Defendants never had a poster posted at the location where Plaintiff worked, which made reference to tips.  Barrientos Deposition (1/11/16), P33, L21-25; P34.  Plaintiff states in Para. 13 of his Affidavit that "There was no poster anywhere on the premises reflecting the overtime and minimum wage laws and/or tip credit."  Also, Barrientos also answered "[n]o" when asked if Barrientos, her husband (i.e. Defendant Valera) or anyone else ever explained to the Plaintiff that his hourly wages were going to be credited in relation to the tips he received.  Barrientos Deposition (1/11/16), P34, L2-10.  Plaintiff states in Para. 14 of his Affidavit that "At no point in my employment with Defendants was it explained to me by Defendants and/or by and through their agents (i.e. manager) that Defendants would credit my tips towards the minimum wages Defendants were required to pay me per hour."

In *Davis v. B&S, Inc.,* 38 F.Supp.2d 707 (N.D. Ind. 1998), which relied on *Kilgore*, makes its clear that *Davis* and *Kilgore* do not provide Defendants sufficient legal authority to overcome their lack of notice.  As *Davis* stated, "[i]n *Kilgore*, the defendant employer had provided its employees a "file folder" containing various written materials, including a statement describing the employer's tip policy.  This written statement fully quoted Section 203(m), and expressly informed the reader that "tips will be used as a credit against the minimum wage as permitted by federal and/or state law."  *Davis*, 38 F.Supp.2d at 718-19, citing *Kilgore*, 160 F.3d at 298-99.

Plaintiff states in Para. 12 of his Affidavit that "Defendants did not provide proper notice of tip credit policy and I have never seen the letter from Defendants' accountant

7

saying I was a "tipped" employee until after it was provided by Defendants' attorney to my counsel, after the lawsuit was initiated. I never saw a letter and/or never was provided a letter that stated the employees minimum wage in Florida. Also, I was never paid overtime wages when I worked over 40 hours per week."

In the unpublished Eleventh Circuit the case of *Pellon v. Business Representations*, 291 Fed.Appx. 310 (11th Cir. 2008), the court addressed notice and the tip credit. The Eleventh Circuit did not provide analysis in *Pellon*, but rather affirmed and referred to the District Court's reasoning. *See, Pellon v. Business Representations*, 528 F.Supp.2d 1306 (S.D. Fla. 2007). However, even if this Court follows the more strict approach in *Pellon* (for example "informing" of the tip credit is sufficient, so "explaining" is not required), the case at bar is distinguishable. *Pellon*, F.Supp.2d at 1310. Barrientos Deposition (1/11/16), P33, L21-25; P34. Defendant Barrientos admitted at her first deposition that Defendants never had a poster posted at the location where Plaintiff worked, which made reference to tips. Barrientos Deposition (1/11/16), P33, L21-25; P34. In the case at bar, Defendants cannot even argue Plaintiff was informed by way of a poster.

C.   The 7(i) Retail Exemption.

The Eleventh Circuit has long held that exemptions under the Fair Labor Standards Act are to be construed strictly and narrowly in favor of coverage of employees, affording maximum coverage to the employees due to the broad remedial purpose behind the Act. *Nicholson v. World Business Network, Inc.,* 105 F.3d 1361 (11th Cir. 1997). Presumably, this is why the Eleventh Circuit articulated the rule in *Klinedinst v. Swift*

*Investments, Inc.*, 260 F.3d 1251 (11th Cir. 2001) that employers must prove FLSA exemptions by "clear and affirmative" evidence.

In order to be exempt from overtime payments of the Fair Labor Standards Act pursuant to the 29 U.S.C. 207(i) the following criteria must be met:

> Employment by retail or service establishment. No employer shall be deemed to have violated subsection (a) by employing any employee at a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 6 [29 USCS § 206], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee. 29 U.S.C. § 207(i).

The first prong of 29 U.S.C. 207(i) states that "(1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 6 [29 USCS § 206]. [Emphasis added]. 29 C.F.R. 778.109 states:

> The "regular rate" under the Act is a rate per hour. The Act does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived there from and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek, with certain statutory exceptions discussed in §§ 778.400 through 778.421. The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid. The following sections give some examples of the proper method of determining the regular rate of pay in particular

9

>instances: (The maximum hours standard used in these examples is 40 hours in a workweek). 29 CFR 778.109

Although the statute does not define "regular rate," the Supreme Court has stated that "the regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S. Ct. 1242, 1245, 89 L. Ed. 1705 (1945). The Department of Labor has adopted this definition and stated that the regular rate cannot be less than the minimum wage. 29 C.F.R. §§ 778.107, 778.108. *Wethington v. Montgomery*, 935 F.2d 222, 224 (11th Cir. Ala. 1991). As set forth in Part B above, Defendants are not entitled to the tip credit as a matter of law. Although there is a dispute as to the number of hours (for example Plaintiff claims overtime damages), Defendant Barrientos was deposed a second time, and claims Plaintiff was paid $35 per day, divided by (6) hours, along with a "gratuity" based on a "certain percentage" charged to the customer. Barrientos Deposition (4/22/16), P4, L16-25. Such would equate to approximately $5.83 per hour which is less than the minimum wage rate. As stated, the regular rate cannot be less than the minimum wage. 29 C.F.R. §§ 778.107, 778.108. *Wethington v. Montgomery*, 935 F.2d 222, 224 (11th Cir. Ala. 1991). Barrientos also described the rate as $5.85, stated Plaintiff was paid in cash, and admitted that no records of the cash paid were kept. Barrientos Deposition (4/22/16), P4, P18, P25, L12-16.

Also, Defendants have filed their own pending motion for summary for summary judgment [DE 31] (Plaintiff was granted an enlargement to respond to same), wherein Defendants seek to dispose of Plaintiff's civil theft claim. Among other things, Defendant argue in [DE 31] that the 18% added to the customer's bill was a service charge. Specifically, Defendants in [DE 31], at 3, argue the alleged service charge is a

"commission" under case law such as *Mechmet v. Four Season Hotels, Ltd*. 825 F.2d 1173 (7th Cir. 1987).

Throughout the case at bar, Defendants have raised the affirmative defense of the "tip credit", however, this Court granted leave for Defendants to also allege the 7(i) retail exemption.  Defendants now appear to be arguing the alleged 18% service charge is a "commission" in an attempt to satisfy 7(i)'s requirement that "more than half [of Plaintiff's] compensation for a representative period (not less than one month) represents **commissions** on goods or services…." *See,* 29 U.S.C. 207(i) *supra* (emphasis added).  In their summary judgment motion, Defendants in [DE 31], at 3, cite case law where the court found no dispute that the service charge was non-negotiable; in other words, the Hotel's banquet customers had no discretion as to whether to pay the service charge or not. (*Id.*). Here the "service charge" is properly classified as a "commission," and not a gratuity." *Nascembeni v. Quayside Place Partners, LLP*, 2010 WL 231467, at *2 (S.D. Fla. 2010).  Defendant Barrientos was deposed a second time, and claims Plaintiff was paid $35 per day, divided by (6) hours, along with a "gratuity" based on a "certain percentage" charged to the customer.  Barrientos Deposition (4/22/16), P4, L16-25. Barrientos identified the amount as "18 percent".  With specific regard to such alleged service charge, Defendant was asked what the policy would be if the customer did not want to pay the 18 percent, and she stated, although such did not happen, "the customer was always right".  Therefore, Defendant Barrientos admitted on direct examination that the customer did in fact have the option to remove the charge (Barrientos stated "[o]f course").  Barrientos Deposition (4/22/16), P5, L1-24.  Consequently, under *Nascembeni*, Defendant Barrientos admitted the customer did have discretion

11

An important requirement regarding the 7(i) exemption, concerns adequate record keeping pursuant to 29 CFR Section 516.16.  Section 516.16 states that:

> With respect to each employee of a retail or service establishment exempt from the overtime pay requirements of the Act pursuant to the provisions of section 7(i), employers shall maintain and preserve payroll and other records containing all the information and data required by § 516.2(a) except paragraphs (a) (6), (8), (9), and (11), and in addition:
> (a) A symbol, letter or other notation placed on the payroll records identifying each employee who is paid pursuant to section 7(i).
> (b) A copy of the agreement or understanding under which section 7(i) is utilized or, if such agreement or understanding is not in writing, a memorandum summarizing its terms including the basis of compensation, the applicable representative period and the date the agreement was entered into and how long it remains in effect. Such agreements or understandings, or summaries may be individually or collectively drawn up.
> (c) Total compensation paid to each employee each pay period (showing separately the amount of commissions and the amount of noncommission straight-time earnings).

Consequently, the 7(i) retail exemption, requires the employer to maintain and preserve the payroll and other records set forth above under 29 CFR Section 516.16(a)-(c).

In the case of *Jackson v. Leader's Inst., LLC*, 114CV00193TWPDML, 2015 WL 7573228, at *8 (S.D. Ind. 2015), the Court stated that "Plaintiffs argue that, instead of a trial to determine the actual number of hours they worked in each given pay period, the Defendants should be precluded from asserting the Commissions exemption because Defendants failed to keep records as required by 29 C.F.R. § 516.16. However, "this failure alone does not itself invalidate an otherwise applicable exemption." *See Alvarado v. Corp. Cleaning Serv., Inc. (Alvarado II)*, No. 07 C 0661, 2013 WL 6184044, at *9 n.8 (N.D. Ill. Nov. 18, 2013) (quoting Dep't of Labor, Wage & Hour Div., *Field Operations Handbook* § 21h01 (July 12, 1990))."  The Court went on to find that "Instead, given this

mutually acknowledged issue of fact and its clear materiality to this *overtime* dispute, the Court agrees that a trial is necessary to determine the number of hours actually worked by the Plaintiffs per pay period and whether the Plaintiffs were paid one and a half times the federal minimum wage." *Jackson v. Leader's Inst., LLC*, 114CV00193TWPDML, 2015 WL 7573228, at *9 (S.D. Ind. 2015).

With respect to time records, Barrientos claimed the sheet "unfortunately" shows the time that all personnel worked with the Plaintiff; Barrientos claimed that, to make it "easier" "all the employees would use" Plaintiff's code and even Barrientos herself would "input" the code. As to Plaintiff, Barrientos testified "that he never did clock-in or clock-out". Barrientos Deposition (1/11/16), P37, L2-23. Thus, Plaintiff cannot be identified in the records because "other people used his number." Deposition (1/11/16), P38, L1-8. Plaintiff states in Para. 17 of his Affidavit that "Defendants failed to maintain time records and did not require me to keep track of the total hours I worked per shift."

Barrientos also admitted Defendants had no system in place to track Plaintiff's tips, to ensure he was paid at least minimum wages for his hours. Barrientos Deposition (1/11/16), P41, L1-8. Plaintiff states in Para. 15 of his Affidavit that "Defendants had no system and/or policy in place to monitor the amount of tips I was receiving on a daily and/or weekly basis to ensure that I was being paid at least minimum wage per hour." Defendants might argue that Defendants' failure to keep records (as required by 29 C.F.R. § 516.16) requires such issue to be considered at trial under *Alvarado* and *Jackson, supra*, and does not in and of itself invalidate the 7(i) exemption. However, in this case, Defendants did not monitor Plaintiffs tips (and as set forth above in Section B they are not entitled to the tip credit) and the Department of Labor has stated that **the**

**regular rate cannot be less than the minimum wage.** 29 C.F.R. §§ 778.107, 778.108. *Wethington v. Montgomery*, 935 F.2d 222, 224 (11th Cir. Ala. 1991). As stated above, Defendant Barrientos was deposed a second time, and claims Plaintiff was paid $35 per day, divided by (6) hours, along with a "gratuity" based on a "certain percentage" charged to the customer. Barrientos Deposition (4/22/16), P4, L16-25. Such would equate to approximately $5.83 per hour which is less than the minimum wage rate. Barrientos admitted that on the days Plaintiff did work more than (40) hours in a week, he was not paid overtime wages "[b]ecause the salary for waiters is calculated salary plus tips." Deposition (1/11/16), P40, L1-17. Barrientos at one point described the rate as $5.85, stated Plaintiff was paid in cash, and admitted that no records of the cash paid were kept. Barrientos Deposition (4/22/16), P4, P18, P25, L12-16. As stated, Defendants are not entitled to the tip credit, and the Department of Labor has stated that **the regular rate cannot be less than the minimum wage.** 29 C.F.R. §§ 778.107, 778.108. *Wethington v. Montgomery*, 935 F.2d 222, 224 (11th Cir. Ala. 1991). Therefore 7(i) cannot apply as Defendants did not pay Plaintiff the minimum wage as his regular rate. Moreover, as discussed above regarding *Nascembeni, supra,* Defendant Barrientos admitted on direct examination that the customer did in fact have the option to remove the charge (Barrientos stated "[o]f course"). Barrientos Deposition (4/22/16), P5, L1-24.

Finally, regarding the 18%, Plaintiff states in Para. 9 of his Affidavit that "Defendants would then request an arbitrary amount from the waiters and the busboys to be returned to her and give the other waiters, busboys, and I the remaining amount split evenly among us. I would then put the money in my pocket and after Defendants had given us this money at the end of our shift, which included monies received over and

above the 18% charged to the customer in a jar/on the side, separate and apart from this money that Defendants requested be returned, Defendants would then request an additional amount of money which Defendants would put in an envelope for "damaged" plates/glasses, etc., and I believe the remaining amount that Defendants took from me they thought they were entitled to said monies as an owner of the restaurant and that a portion of the monies retained was for withholdings, social security and Medicaid. However, Defendants failed to remit said payments to the Internal Revenue Service (IRS). From on or about May 1, 2014 through on or about August 11, 2015, Defendants retained approximately/on average $150.00 from my tips per week."[1]  In Para. 10 of his Affidavit, Plaintiff states that "I never witnessed the individual Defendant, Debra Barrientos, take a calculator in order to determine a fixed percentage amount to be deducted from the money I received at the end of my shift as Defendants' claim they deducted a set amount to pay the "merchant fee.""

## **CONCLUSION**

WHEREFORE, THE PLAINTIFF MOVES THE COURT TO GRANT PARTIAL SUMMARY JUDGMENT, AND FIND THAT DEFENDANTS ARE NOT PERMITTED TO ASSERT EITHER THE TIP CREDIT OR THE 7(I) RETAIL EXEMPTION.

---

[1] Portions of Plaintiff's Affidavit are intended to later address the Response he plans to file in opposition to Defendants' pending motion for summary judgment, which is why the Affidavit makes references to certain paragraph numbers.

**Respectfully submitted,**

**K. DAVID KELLY, ESQ.**
**J.H. ZIDELL, P.A.**
**ATTORNEY FOR PLAINTIFF**
**300 71ST STREET, #605**
**MIAMI BEACH, FLA. 33141**
**PH: 305-865-6766**
**FAX: 305-865-7167**
**EMAIL: DAVID.KELLY38@ROCKETMAIL.COM**
**F.B.N. 0123870**

**BY:_____/s/ K. DAVID KELLY_____**
          **K. DAVID KELLY, ESQ.**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS SENT SUBSEQUENT TO E-FILING VIA SAME ON 5/24/16 TO:**

**ALL CM/ECF RECIPIENTS**

**GARY ANDREW COSTALES, ESQ.**
**GARY A. COSTALES**
**1200 BRICKELL AVE, SUITE 1230**
**MIAMI, FL 33131**
**PH: 305-375-9510**
**FAX: 305 375 9511**

**BY:__ /s/ K. DAVID KELLY _____**
          **K. DAVID KELLY, ESQ.**