```
1              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF FLORIDA
2
                 CASE NO:  15-23129-CIV-DPG
3

4   ROBERTO ALVAREZ and all others
    similarly situated under 29 U.S.C.216(b)
5
            Plaintiff,
6
    vs.
7
    LOCURA MARINA INC.,
8   JOSE VALERA,
    DEBRA BARRIENTOS,
9
            Defendants.
10  _____/

11

12
                        J.H. ZIDELL, P.A.
13                      300 71st Street
                        #605
14                      Miami Beach, Florida 33141
                        Friday, 10:18 a.m.
15                      April 22, 2016

16

17

18           DEPOSITION OF DEBRA BARRIENTOS

19

20           Taken before Paula Pace, RPR, Notary Public

21   in and for the State of Florida at Large, pursuant

22   to Notice of Taking Deposition filed in the above

23   case.

24

25
```

1    <u>APPEARANCES</u>:

2

3    ON BEHALF OF THE PLAINTIFF:
     J.H. ZIDELL, P.A.
4    300 71st Street
     #605
5    Miami Beach, Florida 33141
     BY:  David Kelly, Esquire
6
     ON BEHALF OF THE DEFENDANT:
7    GARY A. COSTALES, P.A.
     1200 Brickell Avenue
8    Suite 1440
     Miami, Florida 33131
9    BY:  Gary A. Costales, Esquire

10   ALSO PRESENT:  Maria Marcillo
                    A&A Interpreting and Translating
11                  Services

12

13                    - - - - - -

14                  I N D E X

15                    - - - - - -

16   **Debra Barrientos**
                                            <u>PAGE</u>
17      By Mr. Kelly                          03

18      By Mr. Costales                       34

19                  E X H I B I T S

20                                          <u>PAGE</u>

21
     Plaintiff's A - Palacios Accounting
22   Incorporated & Notice to Employees      25

23   Plaintiff's B - Copy of receipt         14

24

25

**JEANNIE  REPORTING    (305)  577-1705**

```
1     Thereupon,

2                        DEBRA BARRIENTOS

3     was called as a witness and, having been first duly

4     sworn, was examined and testified as follows:

5                        DIRECT EXAMINATION

6     BY MR. KELLY:

7          Q.    Good morning.

8          A.    Good morning.

9          Q.    Mrs. Barrientos, you were here before.

10    My name is David Kelly.  I deposed you before.

11    For the record, would you state your full name

12    please.

13         A.    Debra Barrientos.

14         Q.    And, just for the record, my

15    understanding is that Mrs. Barrientos is here as

16    the 30(B)(6) representative and also in her

17    individual capacity, and we're going to limit the

18    questioning today to the court's order that allowed

19    the defendants to amend their answer to have the

20    retail exemption and I'm going to stick to that.

21         A.    We're going to limit the questioning

22    today?

23         Q.    I plan to limit the questioning today

24    to the retail exemption and questions concerning

25    the credit service charges necessary related to
```

```
 1      that.

 2            A.    Okay.

 3            Q.    Okay.  Mrs. Barrientos, so you do --

 4      you recall Roberto Alvarez, right?

 5            A.    Yes.

 6            Q.    Okay.  And is it true he was working

 7      at your restaurant in the beginning of May 2014 as

 8      a waiter; is that correct?

 9            A.    Correct.

10            Q.    And he left, his employment ended

11      approximately August 2000 -- August 11, 2015?

12            A.    Yes.

13            Q.    Okay.  So that period, I might

14      sometimes refer to that as the relevant period.

15            A.    Perfect.

16            Q.    When the plaintiff was hired, could

17      you please clarify what was his rate of pay?

18            A.    He was paid at $35 divided by six

19      hours, approximately, 5.85 plus the mandatory

20      share, which is a gratuity, which is included in

21      the customer's voucher.

22            Q.    You say "gratuity" and you say

23      "customer's voucher," are you talking about a

24      certain percentage that was charged to the

25      customer?
```

```
1              A.    Yes.

2              Q.    And what was that percentage that was

3      charged to the customers?

4              A.    18 percent.

5              Q.    So now this rate of pay that you

6      described, was that how much the plaintiff was paid

7      during the entire relevant period?

8              A.    Yes.

9              Q.    Now, with respect to the 18 percent

10     that was charged, what if the customer did not want

11     to pay that charge?

12             A.    It never happened.

13             Q.    Let me ask this:  Did the restaurant

14     have a policy in the event that such did happen?

15             A.    The client -- the customer was always

16     right.

17             Q.    Okay.  So because the customer is

18     always right, if some customer said to you, I was

19     very unhappy with the service and therefore, I'm

20     not going to pay this additional percentage on my

21     check, would the policy have been then to remove

22     the 18-percent charge because the customer is

23     always right?

24             A.    Of course.

25             Q.    Now, at any time during the relevant
```

```
1    period -- so let me clarify.  Regarding the
2    18 percent, would the plaintiff, when the plaintiff
3    was working on his shift, was there normally
4    another waiter that was also working on the shift?
5         A.    Not always.
6         Q.    So sometimes the plaintiff would be
7    the only server on the shift?
8         A.    Plus a buser.
9         Q.    Okay.  So say the plaintiff and the
10   buser were on the shift together, would -- at the
11   end of the night, would the -- would the plaintiff
12   and the buser share the portion of the 18 percent
13   charge added to the bills?
14        A.    Correct.
15        Q.    And what percentage would the busboy
16   get of that 18 percent?
17        A.    It was -- the waiter was one point and
18   the buser half a point.
19        Q.    Half a point?
20        A.    Half a point.
21        Q.    Let me just ask, for example, just to
22   be clear.  Just say that the total amount was $100.
23   If -- if $100, how would that be divided between
24   the busboy and the plaintiff?
25        A.    If it was $100?
```

1          **Q.**    Yes.

2          **A.**    Okay.  If it's one and a half points,

3    100 would be divided by 1.5.

4          **Q.**    Hold on one moment.  Okay.  For the

5    record, I'm giving the witness a calculator.  If

6    you know, could you tell me exactly based on the

7    $100, could you tell me what you're typing in, and

8    then the answer to how much, you know, the

9    plaintiff would get and the busboy would get, if

10   the $100 was to be divided between them.

11              THE INTERPRETER:  The $100 is what

12       they had to be divided between them?

13   BY MR. KELLY:

14         **Q.**    Yes, between the busboy and -- okay.

15   So you're saying that -- now, the answer that I got

16   is $66 and it looks like $0.66 approximately.  So

17   would that number be the $66.66, that would be the

18   amount the plaintiff would get?

19         **A.**    Correct.

20         **Q.**    And then the busboy would get the

21   rest?

22         **A.**    Correct.

23         **Q.**    Now, when you got this -- could you

24   tell me when you typed that in, please, tell me,

25   for the record, what did you divide, like, tell me

1    what you typed in.  What divided by what to get

2    that figure?  So to get that answer you took 100

3    and you actually divided it by 1.5?

4         **A.**    Yes.

5         **Q.**    Okay.  If there were two waiters and

6    one busboy and $100 was to be divided, how would

7    that be divided?

8              MR. COSTALES:  Objection, form.

9              THE WITNESS:  To begin with, there has

10             never been a $100.

11   BY MR. KELLY:

12        **Q.**    I'm only saying this for an example,

13   to make it easy, to be clear on how it's divided.

14        **A.**    If there are two waiters?

15        **Q.**    Yes and one busboy.

16        **A.**    Two-and-a-half points.

17        **Q.**    Okay.  So you're saying that you would

18   take 100 divided by 2.5?

19        **A.**    Correct.

20        **Q.**    If I divided 100 by 2.5 that comes out

21   to 40.  And so based on the $100, would that mean

22   that each waiter would get $40 and the busboy would

23   get 20?

24        **A.**    If that is an example?

25        **Q.**    Yes, if it was a $100.

```
 1              A.    Yes.

 2              Q.    Now, my next question is, with respect

 3     to the 18 percent, did the restaurant, Locura

 4     Marina, take any amount away from that 18-percent

 5     total at the end of the night before paying the

 6     busboy and/or waiters?

 7              A.    No.

 8              Q.    Just to be clear, is it your testimony

 9     that, during the relevant period, the waiters and

10     busboys got 100 percent of the 18 percent of the

11     checks by the end of the night?

12              A.    I have to clarify:  The question you

13     asked me said that the owners get the money, is

14     that correct?  Is the question correct?

15              Q.    You know what, I don't want to

16     interrupt you, I'm not going to change the

17     question, but I'm going to ask it a different way.

18     I want to make it easier.

19                    MR. KELLY:  Or do you want her to try

20            to answer it because I'm just going to ask

21            her a different way?

22                    MR. COSTALES:  Whatever you want, if

23            she's trying to -- I think she has a

24            different understanding of the question.

25     BY MR. KELLY:
```

1    **Q.**    Right.  So I'm going to try to

2    rephrase to make it easier.  I'm going to use an

3    example.  Okay.  This is my example.  This is just

4    an example.  Okay.  At the end of the night the

5    total sales were only a $100, for example, so

6    18 percent charged to that would be $18.  Now, my

7    question is, regarding that $18, did -- was any

8    amount taken out of that $18 by the defendants

9    before it was distributed to the waiters and

10   busboys?

11           **A.**    The question is better.

12           **Q.**    Okay.

13           **A.**    The waiters, not the owners, would get

14   their tips.  The mandatory share that appears on

15   the customers' vouchers, the waiters would leave

16   the percentage that it stipulated at the end of the

17   voucher.  The mandatory share that appears on the

18   voucher shows a percentage, there is a payment from

19   the merchant's bank with which the money is in the

20   bank account.

21           **Q.**    Okay.  Do you have copies of these, to

22   be clear, do you have copies of these mandatory

23   share -- the documents that show these mandatory

24   share vouchers regarding the tables that the

25   plaintiff served?

```
 1              A.    Yes.
 2              Q.    Did you provide those to your --
 3                    MR. COSTALES:  Yes, I think we did.  I
 4              remember we have one.  I have one in the
 5              office that is a sample.  I thought we had
 6              sent that.
 7                    MR. KELLY:  Could have, I could be
 8              wrong, I went through the file, but I had
 9              asked for that, whatever was given on that,
10              so I could have it and so I can double
11              check.  I have a lot of documents you sent
12              me.
13                    MR. COSTALES:  I could send it now
14              because I know I have it.
15                    MR. KELLY:  That would be good.  Yeah.
16              I can just go print it out in a minute.
17                    MR. COSTALES:  You want me to call the
18              office?
19                    MR. KELLY:  If you could, you want to
20              stop for a minute.
21                    MR. COSTALES:  Yeah.
22                    MR. KELLY:  We're going to stop on the
23              record.
24         BY MR. KELLY:
25              Q.    I gave a copy of this to the defense
```

1    counsel, the witness and the court reporter.  I'm

2    looking at a receipt and it is -- has the name

3    server Jose on it, it looks like -- it looks like

4    it's dated March 9th, maybe, 2015.  It says total

5    amount of 58.42.  All right.  So when I see the

6    total of that bill is $50.14, right?

7         **A.**    Correct.

8         **Q.**    So I see gratuity there, it says 8.28.

9    What is that amount for?

10        **A.**    That is the mandatory shares.

11        **Q.**    So that is the amount that the

12   plaintiff and the busboy would get?

13        **A.**    From one bill.

14        **Q.**    Okay.  Now, if I take $50.14, and I

15   multiply that times 18 percent, .18, that comes to

16   9.02, so my question is why isn't the gratuity

17   saying $9.02?

18        **A.**    Because the system registers

19   18 percent of the food, of the amount for food, not

20   including taxes.

21        **Q.**    So the -- would -- so my question is

22   this then.  So I take the $50.14 and I multiply

23   that times 18 percent and I get $9.02, and then I

24   should multiply that by 10 percent, .10?

25        **A.**    No.

```
 1                    MR. COSTALES:  You want me to
 2          interject?  It's simple.
 3                    MR. KELLY:  Yeah, if you're clear.
 4                    MR. COSTALES:  The 18 percent is on
 5          the actual food cost not on the tax, so
 6          50.14 is with sales tax.  Right?
 7                    THE WITNESS:  Yes.
 8                    MR. COSTALES:  50.14 is with sales
 9          tax.
10                    THE INTERPRETER:  With sales tax?
11                    MR. COSTALES:  Yes.  Let's go off the
12          record.
13                    MR. KELLY:  Let's go off the record
14          for a minute.
15                    (Thereupon, a short recess was taken.)
16   BY MR. KELLY:
17          Q.   Now, I'm clear.  All right.  So back
18   on the record.  So with respect to this amount, the
19   total bill on this receipt is $50.14.  However,
20   that includes the tax of $4.14, right?
21          A.   Correct.
22          Q.   So what the restaurant does, is take
23   the $40.14 and subtracts, it doesn't include the
24   $4.14 tax?
25          A.   Correct.
```

1          **Q.**    Which means in this -- on this receipt

2     the food that -- the cost of the food was $46?

3          **A.**    Correct.

4          **Q.**    And then when I multiply that by .18,

5     which is 18 percent of the food, that comes to

6     8.28?

7          **A.**    Correct.

8          **Q.**    Which is why that $8.20 is reflected

9     as a gratuity on the receipt?

10          **A.**    Correct.

11          **Q.**    So my next question is, with respect

12     to that $8.28 gratuity, would the waiter and the

13     busboys get 100 percent of that gratuity?

14          **A.**    No, you have to deduct 3.33 percent of

15     the merchant's bank percentage payment.

16          **Q.**    So in the example, we have $8.28, so

17     how much of that would be deducted?  How much money

18     would be deducted from that?

19          **A.**    I do not have a calculator.

20          (Thereupon, Plaintiff's Exhibit B

21          was marked for identification.)

22     BY MR. KELLY:

23          **Q.**    Okay.  I'm going to give the witness a

24     calculator.  Right now, we're looking at a gratuity

25     of 8.28 on there, which is Plaintiff's Exhibit B.

```
 1              A.    It's $0.27.
 2              Q.    Okay.  So the restaurant -- it has
 3      27.5, rounded up it's $0.28, rounded down --
 4              A.    Correct.
 5              Q.    Now, what is that $0.28 -- let me
 6      clarify, so the restaurant would take that, $0.28?
 7              A.    No.
 8              Q.    What would the restaurant do with that
 9      $0.28?
10              A.    Merchant bank takes it off
11      automatically.
12              Q.    For use of the credit cards?
13              A.    Correct.
14              Q.    Okay.  Just to be clear, could you
15      tell me what you typed in to get to that?  Tell me
16      for the record, what you took -- 8.28 and what did
17      you type in?
18                    THE INTERPRETER:  I'm sorry.
19      BY MR. KELLY:
20              Q.    I just want to know if she would
21      explain for the record exactly what number she's
22      typing in on the calculator.  You could do it
23      again, just tell us what you're typing in.
24              A.    Okay.  8.28 times 3.33, and that is
25      $0.27.57.
```

1      **Q.**   Okay.  Can I see the calculator?

2   Thank you.  Just for the record, to clarify, I

3   think when she typed this in, it would be 8.28

4   times .0333, and that comes out to .27, you know,

5   $0.28 rounded up.  Okay.  So that 28, or $0.27

6   would be subtracted from the $8.28?

7      **A.**   Correct.

8      **Q.**   And now, so that amount would be

9   approximately, so that means that the gratuity then

10   be -- the waiter and busboys would get

11   approximately $8 or $8.01, something like that?

12      **A.**   Of course.

13      **Q.**   Now my question is, now, regarding

14   that $8 that would be left after that merchant

15   charge, would the defendants ever take any of that?

16             MR. COSTALES:  Object to the form.

17             THE WITNESS:  We?

18   BY MR. KELLY:

19      **Q.**   Yes, you and your husband or the

20   restaurant, I mean the defendants.

21      **A.**   No.

22      **Q.**   Okay.  When the plaintiff was paid

23   with respect to his hourly wage, or his daily wage,

24   you said 35 a day?

25      **A.**   No, 5.85 per hour.

**JEANNIE REPORTING   (305) 577-1705**

```
 1              Q.    But you -- just to be clear, is it

 2     true that the plaintiff was paid $35 for a six-hour

 3     shift?

 4                    MR. COSTALES:   Object to the form.

 5     BY MR. KELLY:

 6              Q.    I'm sorry?

 7              A.    If he was making $5.85 per hour, times

 8     six hours that is $35.

 9              Q.    Just to clarify, because I have a

10     calculator, she doesn't right now, but if I take

11     35, divided by six that comes to 5.83?

12              A.    Correct.

13              Q.    So my question is, was he paid $5.83

14     an hour?

15              A.    Plus mandatory share.

16              Q.    Right now, I just want to talk about

17     the hourly rate.  Did he ever work more than those

18     six-hour shifts?

19              A.    No.

20              Q.    Okay.  So just to be clear, during the

21     entire relevant period, in any single day, the

22     plaintiff never worked more than a six-hour shift?

23              A.    No.

24              Q.    I just want to be clear for the

25     record.  So yes or no -- did he ever work more than
```

1       six hours in a shift, yes or no?

2              **A.**    No.

3              **Q.**    What is the most amount of days the

4       plaintiff ever worked in one week?

5              **A.**    He used to work six shifts.

6              **Q.**    Okay.  Did he, ever in one week, work

7       more than six-hour shifts?

8              **A.**    No.

9              **Q.**    Okay.  Now, with respect to the -- the

10      5.83 you're referring to, how was the plaintiff

11      paid that, by cash, check, how was it paid?

12             **A.**    In cash.

13             **Q.**    Always cash?

14             **A.**    Always.

15             **Q.**    Was the plaintiff at any time during

16      his employment ever paid a check or some other way

17      other than cash?

18             **A.**    No, in cash.

19             **Q.**    And just, I think you answered the

20      question.  I just want to be clear.  For any

21      reason, did any of the defendants, the restaurant,

22      you or your husband, ever give the plaintiff a

23      check?

24             **A.**    I do not recall.

25             **Q.**    Okay.  Is it possible you gave him a

```
 1    check?
 2              MR. COSTALES:  Object to the form.
 3              THE WITNESS:  I do not recall.
 4    BY MR. KELLY:
 5         Q.   If you had given him a check, what
 6    would it be for?
 7              MR. COSTALES:  Object to the form.
 8              THE WITNESS:  I do not recall.
 9    BY MR. KELLY:
10         Q.   And just to be clear, so the
11    18 percent, his share of the 18 percent was also
12    paid by cash?
13         A.   Correct.
14         Q.   And then the customers could, if they
15    want, leave an additional tip in addition to the
16    gratuity as seen on Exhibit B?
17              THE INTERPRETER:  I'm sorry.
18    BY MR. KELLY:
19         Q.   The customer could -- have you ever
20    seen the customer leave an additional tip in
21    addition to the gratuity we see on Exhibit B?
22         A.   On the voucher, yes.
23         Q.   Because here I see underneath it has a
24    tip and so they could write an additional amount in
25    there, right?
```

1         **A.**    Correct.

2         **Q.**    Or they could leave cash on the table

3    if they wanted?

4         **A.**    They handle that.

5         **Q.**    Okay.  Did the restaurant ever take

6    any of the tips at all?

7         **A.**    No.

8         **Q.**    Is there any average you could give

9    me, you know, regarding the -- well, the plaintiff

10   claims in his amended interrogatory response --

11              MR. COSTALES:  When did he amend

12         those?

13              MR. KELLY:  This was dated -- the date

14         of this is February 12, 2015, it was --

15         actually that's number four.

16              MR. COSTALES:  Let me see those.  All

17         right.

18   BY MR. KELLY:

19        **Q.**    He is claiming in there that

20   defendants began retaining approximately $150 from

21   plaintiff's tips, did that ever happen?

22        **A.**    Never.

23        **Q.**    And then he also says that a portion

24   of the monies, which would have been cash, as you

25   said was cash, he is saying that you were retaining

```
 1    money for withholdings and Social Security and
 2    Medicaid?
 3           A.    That's a lie.
 4           Q.    Okay.  So my -- your -- just to
 5    clarify, your testimony is that the restaurant
 6    never withheld any taxes or -- let me ask this to
 7    be clear.  Did the restaurant ever, the defendants,
 8    the restaurant ever withhold any tax withholding,
 9    Social Security or Medicaid?
10           A.    False.
11           Q.    Okay.  Did the restaurant ever
12    withhold any withholdings for any employees?
13           A.    No.
14           Q.    With respect to this exhibit, we see
15    where it says on there gratuity, which you've
16    identified as 18 percent, and then we see tip, are
17    there any other records that you have, you know,
18    anything regarding checks or bills to customers,
19    anything?  I just generally want to find out if you
20    have any other documents, different types of
21    documents, other than these types of checks to the
22    customer, that make reference to tips or gratuity
23    or service charges.
24           A.    I will have to request it from the
25    company that handles the system.  You want it for
```

1    the time that he worked there?

2             **Q.**    Yes, I mean, if you have something.

3             **A.**    I can get it.

4             **Q.**    What is it?

5             **A.**    Ordyx is the name of the company.  The

6    one that handles the system, like a cash register,

7    but it's electronic.

8             **Q.**    So this exhibit I see here, this check

9    to the customer, I see the server listed as Jose.

10            **A.**    Uh-huh.

11            **Q.**    Do you see that at the top?

12            **A.**    Correct.

13            **Q.**    So this is not the plaintiff, right?

14            **A.**    The plaintiff?

15            **Q.**    Roberto Alvarez.

16            **A.**    No.

17            **Q.**    My question first is, regarding these,

18   Exhibit B, do you have all the checks for the

19   tables Roberto handled during his employment?

20            **A.**    I can get that.

21            **Q.**    When can you -- how long will it take

22   you to get that?

23            **A.**    72 hours.

24            **Q.**    We do request that we get copies of

25   all those, all the checks that the plaintiff --

```
1           A.    The ones that have the name of

2     Roberto?

3           Q.    Yes, those and would there be others

4     that Roberto handled that his name is not on?

5           A.    Of course.

6           Q.    And would you be able to find those

7     and identify those?

8           A.    Correct.

9           Q.    So that's what we're requesting that

10    you supplement your previous discovery responses

11    with.

12          A.    I will send it to my attorney.

13          Q.    Thank you.  And you think you can get

14    those in 72 hours?

15          A.    Yes.

16          Q.    Now, is there something else that you

17    can get or have regarding the computer systems that

18    reference gratuities, tips or service charges?

19                MR. COSTALES:  Objection to form.

20                THE WITNESS:  Yes.

21    BY MR. KELLY:

22          Q.    So what are those, what is that?

23          A.    Oh no, this.

24          Q.    Okay.  Okay.  I just don't want to

25    miss anything.  So just to clarify, you don't have
```

1    any other records and cannot get any other records

2    that, other than these receipts or these customer

3    checks, that actually use the language on them

4    "tip, gratuity, or service charge"?

5         **A.**   I will send my attorney everything I

6    have.

7         **Q.**   But my question is, can you identify

8    now any other types of documents or records other

9    than the customer checks like we see here with

10   Exhibit B?

11        **A.**   I do not want to get confused.  I have

12   this.

13        **Q.**   Right.

14        **A.**   Plus the final voucher for the day.

15        **Q.**   Is the final voucher something other

16   than this?

17        **A.**   It's the total of the gratuities.

18        **Q.**   Okay.

19        **A.**   Plus tips.

20        **Q.**   Okay.

21        **A.**   It's the last one.

22        **Q.**   Can you get the final vouchers that

23   are limited to the plaintiff during the entire

24   relevant period?

25        **A.**   Correct.

1          **Q.**    Okay.  So we're asking for these

2     receipts, all for the plaintiff, for the relevant

3     period and also the final vouchers for the

4     plaintiff.

5          **A.**    I am going to get everything I can,

6     and if you can use them.

7          **Q.**    So other than perhaps these checks and

8     the final vouchers, I just want to be clear, are

9     there any other records that you're aware of that

10    use the word "gratuity" on it or "tip" or "service

11    charge"?

12         **A.**    I believe this is it.

13         **Q.**    Okay.  You have any -- did you keep

14    any records of the cash that was paid to the

15    plaintiff?

16         **A.**    No.

17         **Q.**    Okay.

18         **A.**    Can I answer a phone call I'm getting?

19         **Q.**    I have no problem.  You are -- want to

20    go off the record if your attorney doesn't mind.

21    Take five minutes.

22              (Thereupon, a short recess was taken.)

23              (Thereupon, Plaintiff's Exhibit A

24         was marked for identification.)

25    BY MR. KELLY:

1    **Q.**   I am going to give you what is marked

2    as Plaintiff's Exhibit A.  I will give a copy to

3    your attorney and also to you.  Now this -- what

4    this is, it's a letter from Palacios Accounting

5    Incorporated dated September 10, 2015.  Attached to

6    that are notices -- Notice to Employees, Minimum

7    Wage in Florida, and it discusses, this is for 2014

8    and '15, and discusses tip employees.

9              MR. COSTALES:  This was never produced

10             today me in discovery.  I've never seen

11             this before.

12             MR. KELLY:  Actually, this was given

13             to us.  I don't know where we got this.  I

14             mean, this is from their accountant.

15             MR. COSTALES:  I have never seen this

16             before.  This should have been provided in

17             plaintiff's discovery.

18             THE WITNESS:  I haven't either.

19   BY MR. KELLY:

20       **Q.**   Did you ever see this before?

21       **A.**   No.

22             MR. KELLY:  I would say -- I would

23             have to look where we got this, but I was

24             always assuming we got this from --

25             MR. COSTALES:  It appears to be from

1              Palacios Accounting, but I never received

2              this in discovery.

3                   MR. KELLY:  If we can go off the

4              record, I would like to look real quick to

5              see, you know, maybe where I got it

6              initially.

7                   (Thereupon, a short recess was taken.)

8         BY MR. KELLY:

9              Q.   All right.  So the best -- I would

10        have to look through the discovery.  I mean,

11        looking at this, best I can tell, it was sent to us

12        from their accountant in relation to the minimum

13        wage letter.  Whether we provided this thing, we

14        didn't, so I guess we're providing it now and

15        obviously, we're waiting for discovery too from

16        them, all those responses and receipts and check

17        reports, so --

18             A.   Okay.

19             Q.   So my question is, is Palacios your

20        accountant?

21             A.   Yes.

22             Q.   And your -- so what -- so you

23        contacted him when you got served with a minimum

24        wage letter; is that correct?

25             A.   I have never received this letter.

1          **Q.**    My question is though, did you ever

2     talk to Mr. Palacios about this lawsuit?

3          **A.**    Yes.

4          **Q.**    Okay.  So did you -- and then is that

5     why he sent this letter to this firm?

6          **A.**    No idea.

7          **Q.**    Did you ask him to send this to this

8     law firm?

9          **A.**    No.

10          **Q.**    Why would your accountant just send us

11     something without you telling him to do so?

12               MR. COSTALES:  Objection to form.

13               THE WITNESS:  I don't know.

14     BY MR. KELLY:

15          **Q.**    Did he ever send this to your

16     attorney?

17          **A.**    I never had this before.

18          **Q.**    Okay.  Did you give your

19     instructions -- did you give Mr. Palacios any

20     instructions to send any letters to this law firm?

21          **A.**    No.

22          **Q.**    So you're telling us that Carlos

23     Palacios, just on his own, decided to send this law

24     firm a letter and minimum wage notices regarding

25     tip credit?

1          **A.**     I don't know.

2          **Q.**     So your testimony is that Carlos

3     Palacios, he went and he communicated with this law

4     firm and sent a letter here without your

5     authorization?

6                    MR. COSTALES:  Objection to form.

7                    THE WITNESS:  I don't know.

8     BY MR. KELLY:

9          **Q.**     Did you know that he contacted this

10    law firm?

11                   MR. COSTALES:  Object to the form.

12                   THE WITNESS:  I do not know.

13    BY MR. KELLY:

14         **Q.**     Okay.  Did you ever see the attached,

15    if you look at pages 2 and 3 --

16         **A.**     Two and three or three and four?

17         **Q.**     Actually there are two, attached to

18    the letter, yeah, pages 3 and 4 are the Notices to

19    the Employees and Minimum Wage of Florida, do you

20    see those?

21         **A.**     Now, I do.

22         **Q.**     Did you ever have those hanging up at

23    the restaurant?  Yes?

24         **A.**     I do not recall.

25         **Q.**     Okay.  Do you know if -- I'm not

```
 1    asking about your communications, but do you know
 2    if Mr. -- your accountant, Mr. Palacios was
 3    communicating with your attorney?
 4         A.    I do not recall.
 5         Q.    Now, if I look at -- let's look at
 6    paragraph, the last paragraph on page 1 of this
 7    letter from your accountant.
 8              THE INTERPRETER:  You want me to read
 9         it?
10              MR. KELLY:  Yes, about Mr. Roberto.
11         And did you finish the -- the whole
12         paragraph -- where did you end?
13              THE INTERPRETER:  Finished the whole
14         paragraph.
15              MR. KELLY:  Where we pay?
16              THE INTERPRETER:  Yes.
17    BY MR. KELLY:
18         Q.    So do you believe that that's accurate
19    or not?
20         A.    Yes.
21         Q.    So just for the record, I'm going to
22    read it in English, it says:  "Mr. Alberto, Mr.
23    Roberto Alvarez earned $35 plus tips.  His tips
24    averaged between $80 and $110 per day.  Therefore,
25    Mr. Alvarez earned between $115 and $145 for six
```

1   days of work.  This amount of earnings is the

2   amount that all waiters and waitresses earn in our

3   restaurant.  We've also obtained and furnished

4   signed affidavits from our employees.  These

5   affidavits confirm the wages we pay."  And then

6   attached to this letter is notices or Notice to

7   Employees, Employees Minimum Wage in Florida.  It

8   says it's for 2014 and '15, it says, for example,

9   the 2014 minimum wage in Florida is 7.93 an hour

10  effective January 1st, 2014, with a minimum wage of

11  at least 4.93 per hour for tipped employees, in

12  addition to tips.

13           So my question is, with respect to

14  that notice there, you -- have you ever seen this

15  Notice to Employees?

16      A.    I do not recall.

17      Q.    When the plaintiff was hired, did you

18  explain to him what his wages were going to be?

19      A.    He was already working at that

20  restaurant.

21      Q.    Just to clarify, my question for --

22  what you intended was, you said he was paid $5.83

23  an hour, right?

24      A.    Yes.

25           THE INTERPRETER:  I'm sorry, what's

1    the amount you said?

2    BY MR. KELLY:

3         **Q.**   Based on his alleged 36 hours a week

4    shifts --

5         **A.**   How many hours.

6    BY MR. KELLY:

7         **Q.**   36-hours-a-week shifts, he was paid

8    the hourly rate of $5.83, correct?

9         **A.**   Plus mandatory share.

10        **Q.**   So your intention was to credit the

11   rest of his minimum wages with the gratuity amount

12   that is on these receipts; is that right?

13        **A.**   Correct.

14        **Q.**   You would say that the company, as a

15   restaurant -- all of your profits, all of your

16   sales are for your restaurant services to your

17   customers; is that correct?

18             THE INTERPRETER:  Can you repeat that?

19   BY MR. KELLY:

20        **Q.**   I'm going to withdraw that.  The only

21   business that Locura Marina conducts during the

22   relevant period was as a restaurant to serve

23   customers; is that correct?

24        **A.**   Yes.

25        **Q.**   During the time the plaintiff was

1    working, did you know what the minimum wage rate

2    was?

3         **A.**    I knew it was $5 always, yes.

4         **Q.**    My question -- do you know, aside from

5    the credit that you were taking regarding his

6    hourly wage, did you know what the total amount

7    was, like the total amount of the minimum wage

8    requirement was?

9         **A.**    Yes.

10        **Q.**    And was the restaurant, were you or

11   anybody at the restaurant, were you making sure and

12   monitoring that the plaintiff, with respect to the

13   cash he was paid, was, at least, always being paid

14   the equivalent of one and one-half times the amount

15   of that minimum wage rate?

16        **A.**    Yes, more.

17        **Q.**    All right.  Would you say that --

18   during the entire relevant period, was more than

19   half, more than 50 percent of the money that the

20   plaintiff got paid in cash, was that -- did that

21   come from the gratuity or the gratuity we see on

22   the check?

23        **A.**    Yes.

24        **Q.**    How do you know that?

25        **A.**    Because I have the final voucher that

```
 1    shows the total of the gratuity.
 2           Q.    So those are -- and those are included
 3    in those documents you're going to give to us,
 4    correct?
 5           A.    Correct.
 6           Q.    Okay.  I'm almost done.
 7           A.    I have a problem.  I might have to go.
 8           Q.    Okay.
 9                 MR. KELLY:  I think I'm done.  Do you
10           have any cross for her?
11                 MR. COSTALES:  No.
12                    CROSS-EXAMINATION
13    BY MR. COSTALES:
14           Q.    Well, could you think of any occasion
15    where a customer asked that the service charge be
16    removed from a bill?
17           A.    Never.
18                 MR. COSTALES:  Nothing further.
19                 MR. KELLY:  Okay.  And I'm going to
20           take a copy of that, word copy of it and
21           hard copy of it.
22                 MR. COSTALES:  Read.
23                 One more question.
24    BY MR. COSTALES:
25           Q.    Was the service charge added to every
```

1    bill, every customer bill?

2          **A.**    Yes.

3          **Q.**    Okay.  And you never had a situation

4    where somebody tried to take it off the bill,

5    correct?

6          **A.**    No.

7          **Q.**    What would you have done if they asked

8    to take it off the bill?

9          **A.**    It's mandatory shared.

10         **Q.**    Mandatory-shared charge?

11         **A.**    Charge.  It's not -- it is like

12   compulsory gratuity, that is what we call it that.

13              THE INTERPRETER:  Okay.  We need to

14         make a correction for the record.  Every

15         time she has said "mandatory share," she

16         meant "mandatory charge."

17              MR. COSTALES:  Nothing further.

18              MR. KELLY:  I need to redirect real

19         quick.

20                  REDIRECT EXAMINATION

21   BY MR. KELLY:

22         **Q.**    Before when I questioned you at the

23   beginning of your deposition, I asked you about the

24   gratuity, remember you told me about the customer

25   always being right?

**JEANNIE REPORTING    (305) 577-1705**

```
1              A.    Yes.
2              Q.    And is it correct that you told me
3    that if a customer had asked for that to be removed
4    because they weren't happy with the service, that
5    you would -- the restaurant would have removed that
6    because the customer is always right; is that
7    correct?
8              A.    He asked me as a example, it never
9    happened.
10             Q.    Is your answer to what I just asked
11   you -- are you changing the answer you gave me
12   before about the customer always being right?
13                  MR. COSTALES:  Objection to form.
14                  THE WITNESS:  Of course.
15   BY MR. KELLY:
16             Q.    Oh, you're changing your answer?
17             A.    I understood that was an example.
18             Q.    And you know you're under oath today,
19   you're under oath with these questions?
20             A.    Of course.
21             Q.    So I'm going to clarify then.  My
22   question is, in an example, if a customer had told
23   the restaurant that they were unhappy with the
24   service, I want the gratuity taken off, would the
25   restaurant have taken the gratuity off, yes or no?
```

```
 1                    A.    No, no.

 2                    Q.    That's your answer now?

 3                    A.    Of course.

 4                    Q.    But I thought the customer is always

 5       right?

 6                    A.    But I am trying to tell you that

 7       that's a mandatory charge for the employees.

 8                    Q.    So -- you realize -- you agree with me

 9       that you now changed your answer under oath?

10                    MR. COSTALES:  Objection to form.

11       BY MR. KELLY:

12                    Q.    You realize?

13                    A.    Because at the beginning I understood

14       you were using it as an example of the $100 tip.

15                    Q.    What $100 tip?

16                    A.    When you mentioned to me that the $100

17       was an example.

18                    Q.    Uh-huh.

19                    A.    I suppose that this was an example.

20       If something like that would have happened that I

21       had to remove that charge, I would have never done

22       it, but it's never happened.

23                    Q.    Even though -- so the customer is not

24       always right?

25                    A.    Not with a mandatory charge.
```

1             MR. KELLY:  Okay.  The record will

2        reflect itself when we get the transcript.

3        Thank you very much.

4             (Thereupon, the deposition was

5        concluded at 10:50 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<pre>
 1                     CERTIFICATE OF OATH

 2

 3    STATE OF FLORIDA

 4    COUNTY OF DADE

 5

 6

 7            I, the undersigned authority, certify

 8    that DEBRA BARRIENTOS personally appeared before me

 9    and was duly sworn.

10            WITNESS my hand and official seal this

11    9th day of May, 2016.

12

13

14

15    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

16    PAULA PACE

17    Notary Public State of Florida

18    My commission Expires:  8-24-18

19

20

21

22

23

24

25
</pre>

PAULA D. PACE
MY COMMISSION # FF 146491
EXPIRES: August 24, 2018
Bonded Thru Notary Public Underwriters

```
 1                CERTIFICATE OF SHORTHAND REPORTER

 2

     STATE OF FLORIDA   )
 3                       )  SS.
     COUNTY OF DADE      )

 4

                 I, Paula Pace, RPR do hereby certify
 5   that I was authorized to and did stenographically
     report deposition of DEBRA BARRIENTOS, that a
 6   review of the transcript was requested; and that
     the foregoing transcript, pages 1 through 38 is a
 7   true record of my stenographic notes.

 8                 I FURTHER CERTIFY that I am not a
     relative, employee, or attorney, or counsel of any
 9   of the parties, nor am I a relative or employee of
     any of the parties' attorney or counsel connected
10   with the action, nor am I financially interested in
     the action.

11

                 DATED, this 9th day of May, 2016.
12

13

14        _____
15             Paula Pace, RPR

16

17

18

19

20

21

22

23

24

25
```

<u>JURAT PAGE</u>

STATE OF FLORIDA        )
                        )SS.
COUNTY OF DADE      )


            I, hereby certify that I have read the

foregoing transcript pages 1 to 38 and find the

same to be true and accurate.

            Any corrections made by me are set

forth on the errata page attached hereto.


            _____

            DEBRA BARRIENTOS

Sworn to and subscribed before me on this,
_____ day of _____, 2016.

_____
Notary Public in and for the
State of Florida at Large.
My Commission expires:

```
 1                    JEANNIE REPORTING
                      28 West Flagler Street
 2                         Suite 610
                      Miami, Florida 33130
 3

 4

 5      TO:  Debra Barrientos
             c/o Gary A. Costales, Esquire
 6           GARY A. COSTALES, P.A.
             1200 Brickell Avenue
 7           Suite 1440
             Miami, Florida 33131
 8
        May 9, 2016
 9
        IN RE:  Alvarez v. Locura
10      CASE NO:  15-23129-CIV-DPG

11      Dear Ms. Barrientos,

12      With reference to the examination of YOURSELF,
        deponent in the above-styled cause, taken on April
13      22, 2016 under oath, please be advised that the
        transcript of the Deposition has been transcribed
14      and is awaiting your signature.

15      Please arrange to conclude this matter at your
        earliest convenience.  We would suggest that you
16      telephone this office and arrange an appointment
        suitable for all concerned.
17
        However, if this has not been taken care of by
18      June 9, 2016, we shall conclude the reading and
        signing of said deposition has been waived, and
19      shall then proceed to file the original of the said
        transcript with the party who took the deposition,
20      without further notice to any parties.

21                         Sincerely,

22

23      _____
                          Paula Pace
24
        cc:  All Counsel of Record.
25
```



**JEANNIE REPORTING (305) 577-1705**

```
 1                        ERRATA SHEET

 2            I, DEBRA BARRIENTOS, do hereby acknowledge

 3     that I have read this transcript and find it to be

 4     accurate except for the corrections noted below.

 5

 6     PAGE _____ LINE _____ / _____

 7     PAGE _____ LINE _____ / _____

 8     PAGE _____ LINE _____ / _____

 9     PAGE _____ LINE _____ / _____

10     PAGE _____ LINE _____ / _____

11     PAGE _____ LINE _____ / _____

12     PAGE _____ LINE _____ / _____

13     PAGE _____ LINE _____ / _____

14     PAGE _____ LINE _____ / _____

15     PAGE _____ LINE _____ / _____

16

17

18                          _____

19                          DEBRA BARRIENTOS

20

21

22            Signed and dated this _____ day of _____

23     2016.

24

25
```

## #

**#605** [2] - 1:13, 2:4

## $

**$0.27** [2] - 15:1, 16:5
**$0.27.57** [1] - 15:25
**$0.28** [5] - 15:3, 15:5, 15:6, 15:9, 16:5
**$0.66** [1] - 7:16
**$100** [14] - 6:22, 6:23, 6:25, 7:7, 7:10, 7:11, 8:6, 8:10, 8:21, 8:25, 10:5, 37:14, 37:15, 37:16
**$110** [1] - 30:24
**$115** [1] - 30:25
**$145** [1] - 30:25
**$150** [1] - 20:20
**$18** [3] - 10:6, 10:7, 10:8
**$35** [4] - 4:18, 17:2, 17:8, 30:23
**$4.14** [2] - 13:20, 13:24
**$40** [1] - 8:22
**$40.14** [1] - 13:23
**$46** [1] - 14:2
**$5.83** [3] - 17:13, 31:22, 32:8
**$5.85** [1] - 17:7
**$50.14** [4] - 12:6, 12:14, 12:22, 13:19
**$66** [1] - 7:16
**$66.66** [1] - 7:17
**$8.01** [1] - 16:11
**$8.20** [1] - 14:8
**$8.28** [3] - 14:12, 14:16, 16:6
**$80** [1] - 30:24
**$9.02** [2] - 12:17, 12:23

## '

**'15** [2] - 26:8, 31:8

## 0

**03** [1] - 2:17
**0333** [1] - 16:4

## 1

**1** [3] - 30:6, 40:6, 41:8

**1.5** [2] - 7:3, 8:3
**10** [3] - 12:24, 26:5
**100** [6] - 7:3, 8:2, 8:18, 8:20, 9:10, 14:13
**10:18** [1] - 1:14
**10:50** [1] - 38:5
**11** [1] - 4:11
**12** [1] - 20:14
**1200** [2] - 2:7, 42:6
**14** [1] - 2:23
**1440** [2] - 2:8, 42:7
**15-23129-CIV-DPG** [2] - 1:2, 42:10
**18** [18] - 5:4, 5:9, 6:2, 6:12, 6:16, 9:3, 9:10, 10:6, 12:15, 12:19, 12:23, 13:4, 14:4, 14:5, 19:11, 21:16
**18-percent** [2] - 5:22, 9:4
**1st** [1] - 31:10

## 2

**2** [1] - 29:15
**2.5** [2] - 8:18, 8:20
**20** [1] - 8:23
**2000** [1] - 4:11
**2014** [5] - 4:7, 26:7, 31:8, 31:9, 31:10
**2015** [4] - 4:11, 12:4, 20:14, 26:5
**2016** [8] - 1:15, 39:11, 40:11, 41:16, 42:8, 42:13, 42:18, 43:23
**22** [2] - 1:15, 42:13
**25** [1] - 2:22
**27** [1] - 16:4
**27.5** [1] - 15:3
**28** [2] - 16:5, 42:1
**29** [1] - 1:4

## 3

**3** [2] - 29:15, 29:18
**3.33** [2] - 14:14, 15:24
**30(B)(6** [1] - 3:16
**300** [2] - 1:13, 23:6
**33130** [1] - 42:2
**33131** [2] - 2:8, 42:7
**33141** [2] - 1:14, 2:5
**34** [1] - 2:18
**35** [2] - 16:24, 17:11
**36** [1] - 32:3
**36-hours-a-week** [1] - 32:7
**38** [2] - 40:6, 41:8

## 4

**4** [1] - 29:18
**4.93** [1] - 31:11
**40** [1] - 8:21

## 5

**5** [1] - 33:3
**5.83** [2] - 17:11, 18:10
**5.85** [2] - 4:19, 16:25
**50** [1] - 33:19
**50.14** [2] - 13:6, 13:8
**58.42** [1] - 12:5

## 6

**610** [1] - 42:2

## 7

**7.93** [1] - 31:9
**71st** [2] - 1:13, 2:4
**72** [2] - 22:23, 23:14

## 8

**8** [2] - 16:11, 16:14
**8-24-18** [1] - 39:18
**8.28** [6] - 12:8, 14:6, 14:25, 15:16, 15:24, 16:3

## 9

**9** [2] - 42:8, 42:18
**9.02** [1] - 12:16
**9th** [3] - 12:4, 39:11, 40:11

## A

**A&A** [1] - 2:10
**a.m** [2] - 1:14, 38:5
**able** [1] - 23:6
**above-styled** [1] - 42:12
**account** [1] - 10:20
**accountant** [6] - 26:14, 27:12, 27:20, 28:10, 30:2, 30:7
**Accounting** [3] - 2:21, 26:4, 27:1
**accurate** [3] - 30:18, 41:9, 43:4

**acknowledge** [1] - 43:2
**action** [2] - 40:10, 40:10
**actual** [1] - 13:5
**added** [2] - 6:13, 34:25
**addition** [3] - 19:15, 19:21, 31:12
**additional** [4] - 5:20, 19:15, 19:20, 19:24
**advised** [1] - 42:13
**affidavits** [2] - 31:4, 31:5
**agree** [1] - 37:8
**Alberto** [1] - 30:22
**alleged** [1] - 32:3
**allowed** [1] - 3:18
**almost** [1] - 34:6
**ALSO** [1] - 2:10
**Alvarez** [5] - 4:4, 22:15, 30:23, 30:25, 42:9
**ALVAREZ** [1] - 1:4
**amend** [2] - 3:19, 20:11
**amended** [1] - 20:10
**amount** [19] - 6:22, 7:18, 9:4, 10:8, 12:5, 12:9, 12:11, 12:19, 13:18, 16:8, 18:3, 19:24, 31:1, 31:2, 32:1, 32:11, 33:6, 33:7, 33:14
**answer** [11] - 3:19, 7:8, 7:15, 8:2, 9:20, 25:18, 36:10, 36:11, 36:16, 37:2, 37:9
**answered** [1] - 18:19
**APPEARANCES** [1] - 2:1
**appeared** [1] - 39:8
**appointment** [1] - 42:16
**April** [2] - 1:15, 42:12
**arrange** [2] - 42:15, 42:16
**aside** [1] - 33:4
**assuming** [1] - 26:24
**attached** [5] - 26:5, 29:14, 29:17, 31:6, 41:11
**attorney** [8] - 23:12, 24:5, 25:20, 26:3, 28:16, 30:3, 40:8, 40:9
**August** [2] - 4:11
**authority** [1] - 39:7
**authorization** [1] - 29:5

**authorized** [1] - 40:5
**automatically** [1] - 15:11
**Avenue** [2] - 2:7, 42:6
**average** [1] - 20:8
**averaged** [1] - 30:24
**awaiting** [1] - 42:14
**aware** [1] - 25:9

## B

**bank** [4] - 10:19, 10:20, 14:15, 15:10
**BARRIENTOS** [8] - 1:8, 1:18, 3:2, 39:8, 40:5, 41:15, 43:2, 43:19
**Barrientos** [7] - 2:16, 3:9, 3:13, 3:15, 4:3, 42:5, 42:11
**based** [3] - 7:6, 8:21, 32:3
**Beach** [2] - 1:14, 2:5
**began** [1] - 20:20
**begin** [1] - 8:9
**beginning** [3] - 4:7, 35:23, 37:13
**BEHALF** [2] - 2:3, 2:6
**below** [1] - 4:3
**best** [2] - 27:9, 27:11
**better** [1] - 10:11
**between** [6] - 6:23, 7:10, 7:12, 7:14, 30:24, 30:25
**bill** [8] - 12:6, 12:13, 13:19, 34:16, 35:1, 35:4, 35:8
**bills** [2] - 6:13, 21:18
**Brickell** [2] - 2:7, 42:6
**busboy** [10] - 6:15, 6:24, 7:9, 7:14, 7:20, 8:6, 8:15, 8:22, 9:6, 12:12
**busboys** [4] - 9:10, 10:10, 14:13, 16:10
**buser** [4] - 6:8, 6:10, 6:12, 6:18
**business** [1] - 32:21
**BY** [32] - 2:5, 2:9, 3:6, 7:13, 8:11, 9:25, 11:24, 13:16, 14:22, 15:19, 16:18, 17:5, 19:4, 19:9, 19:18, 20:18, 23:21, 25:25, 26:19, 27:8, 28:14, 29:8, 29:13, 30:17, 32:2, 32:6, 32:19, 34:13, 34:24, 35:21, 36:15, 37:11



## C

**c/o** [1] - 42:5
**calculator** [6] - 7:5, 14:19, 14:24, 15:22, 16:1, 17:10
**cannot** [1] - 24:1
**capacity** [1] - 3:17
**cards** [1] - 15:12
**care** [1] - 42:17
**Carlos** [2] - 28:22, 29:2
**CASE** [2] - 1:2, 42:10
**case** [1] - 1:23
**cash** [13] - 18:11, 18:12, 18:13, 18:17, 18:18, 19:12, 20:2, 20:24, 20:25, 22:6, 25:14, 33:13, 33:20
**cc** [1] - 42:24
**certain** [1] - 4:24
**CERTIFICATE** [2] - 39:1, 40:1
**certify** [3] - 39:7, 40:4, 41:7
**CERTIFY** [1] - 40:8
**change** [1] - 9:16
**changed** [1] - 37:9
**changing** [2] - 36:11, 36:16
**charge** [14] - 5:11, 5:22, 6:13, 16:15, 24:4, 25:11, 34:15, 34:25, 35:10, 35:11, 35:16, 37:7, 37:21, 37:25
**charged** [4] - 4:24, 5:3, 5:10, 10:6
**charges** [3] - 3:25, 21:23, 23:18
**check** [10] - 5:21, 11:11, 18:11, 18:16, 18:23, 19:1, 19:5, 22:8, 27:16, 33:22
**checks** [8] - 9:11, 21:18, 21:21, 22:18, 22:25, 24:3, 24:9, 25:7
**claiming** [1] - 20:19
**claims** [1] - 20:10
**clarify** [10] - 4:17, 6:1, 9:12, 15:6, 16:2, 17:9, 21:5, 23:25, 31:21, 36:21
**clear** [14] - 6:22, 8:13, 9:8, 10:22, 13:3, 13:17, 15:14, 17:1, 17:20, 17:24, 18:20, 19:10, 21:7, 25:8

**client** [1] - 5:15
**Commission** [1] - 41:19
**commission** [1] - 39:18
**communicated** [1] - 29:3
**communicating** [1] - 30:3
**communications** [1] - 30:1
**company** [3] - 21:25, 22:5, 32:14
**compulsory** [1] - 35:12
**computer** [1] - 23:17
**concerned** [1] - 42:16
**concerning** [1] - 3:24
**conclude** [2] - 42:15, 42:18
**concluded** [1] - 38:5
**conducts** [1] - 32:21
**confirm** [1] - 31:5
**confused** [1] - 24:11
**connected** [1] - 40:9
**contacted** [2] - 27:23, 29:9
**convenience** [1] - 42:15
**copies** [3] - 10:21, 10:22, 22:24
**Copy** [1] - 2:23
**copy** [5] - 11:25, 26:2, 34:20, 34:21
**correct** [33] - 4:8, 4:9, 6:14, 7:19, 7:22, 8:19, 9:14, 12:7, 13:21, 13:25, 14:3, 14:7, 14:10, 15:4, 15:13, 16:7, 17:12, 19:13, 20:1, 22:12, 23:8, 24:25, 27:24, 32:8, 32:13, 32:17, 32:23, 34:4, 34:5, 35:5, 36:2, 36:7
**correction** [1] - 35:14
**corrections** [2] - 41:10, 43:4
**cost** [2] - 13:5, 14:2
**COSTALES** [33] - 2:7, 8:8, 9:22, 11:3, 11:13, 11:17, 11:21, 13:1, 13:4, 13:8, 13:11, 16:16, 17:4, 19:2, 19:7, 20:11, 20:16, 23:19, 26:9, 26:15, 26:25, 28:12, 29:6, 29:11, 34:11, 34:13, 34:18, 34:22, 34:24, 35:17, 36:13,

37:10, 42:6
**Costales** [3] - 2:9, 2:18, 42:5
**Counsel** [1] - 42:24
**counsel** [3] - 12:1, 40:8, 40:9
**COUNTY** [3] - 39:4, 40:3, 41:4
**course** [6] - 5:24, 16:12, 23:5, 36:14, 36:20, 37:3
**court** [1] - 12:1
**COURT** [1] - 1:1
**court's** [1] - 3:18
**credit** [5] - 3:25, 15:12, 28:25, 32:10, 33:5
**cross** [1] - 34:10
**CROSS** [1] - 34:12
**CROSS-EXAMINATION** [1] - 34:12
**customer** [21] - 4:25, 5:10, 5:15, 5:17, 5:18, 5:22, 19:19, 19:20, 21:22, 22:9, 24:2, 24:9, 34:15, 35:1, 35:24, 36:3, 36:6, 36:12, 36:22, 37:4, 37:23
**customer's** [2] - 4:21, 4:23
**customers** [5] - 5:3, 19:14, 21:18, 32:17, 32:23
**customers'** [1] - 10:15

## D

**DADE** [3] - 39:4, 40:3, 41:4
**daily** [1] - 16:23
**date** [1] - 20:13
**dated** [4] - 12:4, 20:13, 26:5, 43:22
**DATED** [1] - 40:11
**David** [2] - 2:5, 3:10
**days** [2] - 18:3, 31:1
**Dear** [1] - 42:11
**DEBRA** [8] - 1:8, 1:18, 3:2, 39:8, 40:5, 41:15, 43:2, 43:19
**Debra** [3] - 2:16, 3:13, 42:5
**decided** [1] - 28:23
**deduct** [1] - 14:14
**deducted** [2] - 14:17, 14:18
**DEFENDANT** [1] - 2:6

**Defendants** [1] - 1:9
**defendants** [7] - 3:19, 10:8, 16:15, 16:20, 18:21, 20:20, 21:7
**defense** [1] - 11:25
**deponent** [1] - 42:12
**deposed** [1] - 3:10
**deposition** [5] - 35:23, 38:4, 40:5, 42:18, 42:19
**DEPOSITION** [1] - 1:18
**Deposition** [2] - 1:22, 42:13
**described** [1] - 5:6
**different** [4] - 9:17, 9:21, 9:24, 21:20
**DIRECT** [1] - 3:5
**discovery** [5] - 23:10, 26:10, 26:17, 27:2, 27:10, 27:15
**discusses** [2] - 26:7, 26:8
**distributed** [1] - 10:9
**DISTRICT** [2] - 1:1, 1:1
**divide** [1] - 7:25
**divided** [13] - 4:18, 6:23, 7:3, 7:10, 7:12, 8:1, 8:3, 8:6, 8:7, 8:13, 8:18, 8:20, 17:11
**documents** [6] - 10:23, 11:11, 21:20, 21:21, 24:8, 34:3
**done** [4] - 34:6, 34:9, 35:7, 37:21
**double** [1] - 11:10
**down** [1] - 15:3
**duly** [2] - 3:3, 39:9
**during** [10] - 5:7, 5:25, 9:9, 17:20, 18:15, 22:19, 24:23, 32:21, 32:25, 33:18

## E

**earliest** [1] - 42:15
**earn** [1] - 31:2
**earned** [2] - 30:23, 30:25
**earnings** [1] - 31:1
**easier** [2] - 9:18, 10:2
**easy** [1] - 8:13
**effective** [1] - 31:10
**either** [1] - 26:18
**electronic** [1] - 22:7
**employee** [2] - 40:8, 40:9
**Employees** [5] - 2:22,

26:6, 29:19, 31:7, 31:15
**employees** [6] - 21:12, 26:8, 31:4, 31:7, 31:11, 37:7
**employment** [2] - 4:10, 18:16, 22:19
**end** [6] - 6:11, 9:5, 9:11, 10:4, 10:16, 30:12
**ended** [1] - 4:10
**English** [1] - 30:22
**entire** [4] - 5:7, 17:21, 24:23, 33:18
**equivalent** [1] - 33:14
**errata** [1] - 41:11
**ERRATA** [1] - 43:1
**Esquire** [3] - 2:5, 2:9, 42:5
**event** [1] - 5:14
**exactly** [2] - 7:6, 15:21
**EXAMINATION** [3] - 3:5, 34:12, 35:20
**examination** [1] - 42:12
**examined** [1] - 3:4
**example** [15] - 6:21, 8:12, 8:24, 10:3, 10:4, 10:5, 14:16, 31:8, 36:8, 36:17, 36:22, 37:14, 37:17, 37:19
**except** [1] - 43:4
**exemption** [2] - 3:20, 3:24
**Exhibit** [8] - 14:20, 14:25, 19:16, 19:21, 22:18, 24:10, 25:23, 26:2
**exhibit** [2] - 21:14, 22:8
**expires** [1] - 41:19
**Expires** [1] - 39:18
**explain** [2] - 15:21, 31:18

## F

**false** [1] - 21:10
**February** [1] - 20:14
**figure** [1] - 8:2
**file** [2] - 11:8, 42:19
**filed** [1] - 1:22
**final** [6] - 24:14, 24:15, 24:22, 25:3, 25:8, 33:25
**financially** [1] - 40:10
**finish** [1] - 30:11
**finished** [1] - 30:13



**firm** [6] - 28:5, 28:8, 28:20, 28:24, 29:4, 29:10
**first** [2] - 3:3, 22:17
**five** [1] - 25:21
**Flagler** [1] - 42:1
**FLORIDA** [4] - 1:1, 39:3, 40:2, 41:3
**Florida** [12] - 1:14, 1:21, 2:5, 2:8, 26:7, 29:19, 31:7, 31:9, 39:17, 41:19, 42:2, 42:7
**follows** [1] - 3:4
**food** [6] - 12:19, 13:5, 14:2, 14:5
**foregoing** [2] - 40:6, 41:8
**form** [11] - 8:8, 16:16, 17:4, 19:2, 19:7, 23:19, 28:12, 29:6, 29:11, 36:13, 37:10
**forth** [1] - 41:11
**four** [2] - 20:15, 29:16
**Friday** [1] - 1:14
**full** [1] - 3:11
**furnished** [1] - 31:3
**FURTHER** [1] - 40:8

**G**

**GARY** [2] - 2:7, 42:6
**Gary** [2] - 2:9, 42:5
**generally** [1] - 21:19
**given** [3] - 11:9, 19:5, 26:12
**gratuities** [2] - 23:18, 24:17
**gratuity** [23] - 4:20, 4:22, 12:8, 12:16, 14:9, 14:12, 14:13, 14:24, 16:9, 19:16, 19:21, 21:15, 21:22, 24:4, 25:10, 32:11, 33:21, 34:1, 35:12, 35:24, 36:24, 36:25
**guess** [1] - 27:14

**H**

**half** [7] - 6:18, 6:19, 6:20, 7:2, 8:16, 33:14, 33:19
**hand** [1] - 39:10
**handle** [1] - 20:4
**handled** [2] - 22:19, 23:4
**handles** [2] - 21:25, 22:6

**hanging** [1] - 29:22
**happy** [1] - 36:4
**hard** [1] - 34:21
**hereby** [3] - 40:4, 41:7, 43:2
**hereto** [1] - 41:11
**hired** [2] - 4:16, 31:17
**hold** [1] - 7:4
**hour** [10] - 16:25, 17:2, 17:7, 17:14, 17:18, 17:22, 18:7, 31:9, 31:11, 31:23
**hourly** [4] - 16:23, 17:17, 32:8, 33:6
**hours** [7] - 4:19, 17:8, 18:1, 22:23, 23:14, 32:3, 32:5
**husband** [2] - 16:19, 18:22

**I**

**idea** [1] - 28:6
**identification** [2] - 14:21, 25:24
**identified** [1] - 21:16
**identify** [2] - 23:7, 24:7
**IN** [1] - 42:9
**INC** [1] - 1:7
**include** [1] - 13:23
**included** [2] - 4:20, 34:2
**includes** [1] - 13:20
**including** [1] - 12:20
**Incorporated** [2] - 2:22, 26:5
**individual** [1] - 3:17
**instructions** [2] - 28:19, 28:20
**intended** [1] - 31:22
**intention** [1] - 32:10
**interested** [1] - 40:10
**interject** [1] - 13:2
**INTERPRETER** [10] - 7:11, 13:10, 15:18, 19:17, 30:8, 30:13, 30:16, 31:25, 32:18, 35:13
**interpreting** [1] - 2:10
**interrogatory** [1] - 20:10
**interrupt** [1] - 9:16
**itself** [1] - 38:2

**J**

**J.H** [2] - 1:12, 2:3

**January** [1] - 31:10
**JEANNIE** [1] - 42:1
**JOSE** [1] - 1:8
**Jose** [2] - 12:3, 22:9
**June** [1] - 42:18
**JURAT** [1] - 41:1

**K**

**keep** [1] - 25:13
**Kelly** [3] - 2:5, 2:17, 3:10
**KELLY** [45] - 3:6, 7:13, 8:11, 9:19, 9:25, 11:7, 11:15, 11:19, 11:22, 11:24, 13:3, 13:13, 13:16, 14:22, 15:19, 16:18, 17:5, 19:4, 19:9, 19:18, 20:13, 20:18, 23:21, 25:25, 26:12, 26:19, 26:22, 27:3, 27:8, 28:14, 29:8, 29:13, 30:10, 30:15, 30:17, 32:2, 32:6, 32:19, 34:9, 34:19, 35:18, 35:21, 36:15, 37:11, 38:1

**L**

**language** [1] - 24:3
**Large** [2] - 1:21, 41:19
**last** [2] - 24:21, 30:6
**law** [5] - 28:8, 28:20, 28:23, 29:3, 29:10
**lawsuit** [1] - 28:2
**least** [2] - 31:11, 33:13
**leave** [4] - 10:15, 19:15, 19:20, 20:2
**left** [2] - 4:10, 16:14
**letter** [10] - 26:4, 27:13, 27:24, 27:25, 28:5, 28:24, 29:4, 29:18, 30:7, 31:6
**letters** [1] - 28:20
**lie** [1] - 21:3
**limit** [3] - 3:17, 3:21, 3:23
**limited** [1] - 24:23
**LINE** [10] - 43:6, 43:7, 43:8, 43:9, 43:10, 43:11, 43:12, 43:13, 43:14, 43:15
**listed** [1] - 22:9
**LOCURA** [1] - 1:7
**Locura** [3] - 9:3, 32:21, 42:9
**look** [6] - 26:23, 27:4,

27:10, 29:15, 30:5
**looking** [3] - 12:2, 14:24, 27:11
**looks** [3] - 7:16, 12:3

**M**

**mandatory** [14] - 4:19, 10:14, 10:17, 10:22, 10:23, 12:10, 17:15, 32:9, 35:9, 35:10, 35:15, 35:16, 37:7, 37:25
**mandatory-shared** [1] - 35:10
**March** [1] - 12:4
**Marcillo** [2] - 2:10
**Maria** [2] - 2:10
**Marina** [2] - 9:4, 32:21
**MARINA** [1] - 1:7
**marked** [3] - 14:21, 25:24, 26:1
**matter** [1] - 42:15
**mean** [5] - 8:21, 16:20, 22:2, 26:14, 27:10
**means** [2] - 14:1, 16:9
**meant** [1] - 35:16
**Medicaid** [2] - 21:2, 21:9
**mentioned** [1] - 37:16
**merchant** [2] - 15:10, 16:14
**merchant's** [2] - 10:19, 14:15
**Miami** [5] - 1:14, 2:5, 2:8, 42:2, 42:7
**might** [2] - 4:13, 34:7
**mind** [1] - 35:20
**Minimum** [2] - 26:6, 29:19
**minimum** [10] - 27:12, 27:23, 28:24, 31:7, 31:9, 31:10, 32:11, 33:1, 33:7, 33:15
**minute** [3] - 11:16, 11:20, 13:14
**minutes** [1] - 25:21
**miss** [1] - 23:25
**moment** [1] - 7:4
**money** [5] - 9:13, 10:19, 14:17, 21:1, 33:19
**monies** [1] - 20:24
**monitoring** [1] - 33:12
**morning** [2] - 3:7, 3:8
**most** [1] - 18:3
**MR** [76] - 3:6, 7:13, 8:8, 8:11, 9:19, 9:22, 9:25, 11:3, 11:7,

11:13, 11:15, 11:17, 11:19, 11:21, 11:22, 11:24, 13:1, 13:3, 13:4, 13:8, 13:11, 13:13, 13:16, 14:22, 15:19, 16:16, 16:18, 17:4, 17:5, 19:2, 19:4, 19:7, 19:9, 19:18, 20:11, 20:13, 20:16, 20:18, 23:19, 23:21, 25:25, 26:9, 26:12, 26:15, 26:19, 26:22, 26:25, 27:3, 27:8, 28:12, 28:14, 29:6, 29:8, 29:11, 29:13, 30:10, 30:15, 30:17, 32:2, 32:6, 32:19, 34:9, 34:11, 34:13, 34:18, 34:19, 34:22, 34:24, 35:17, 35:18, 35:21, 36:13, 36:15, 37:10, 37:11, 38:1
**multiply** [4] - 12:15, 12:22, 12:24, 14:4

**N**

**name** [6] - 3:10, 3:11, 12:2, 22:5, 23:1, 23:4
**necessary** [1] - 3:25
**need** [2] - 35:13, 35:18
**never** [16] - 5:12, 8:10, 17:22, 20:22, 21:6, 26:9, 26:10, 26:15, 27:1, 27:25, 28:17, 34:17, 35:3, 36:8, 37:21, 37:22
**next** [2] - 9:2, 14:11
**night** [4] - 6:11, 9:5, 9:11, 10:4
**NO** [2] - 1:2, 42:10
**normally** [1] - 6:3
**Notary** [3] - 1:20, 39:17, 41:18
**noted** [1] - 43:4
**notes** [1] - 40:7
**nothing** [2] - 34:18, 35:17
**Notice** [5] - 1:22, 2:22, 26:6, 31:6, 31:15
**notice** [2] - 31:14, 42:20
**notices** [2] - 26:6, 28:24, 31:6
**Notices** [1] - 29:18
**number** [3] - 7:17, 15:21, 20:15



## O

oath [4] - 36:18, 36:19, 37:9, 42:13
OATH [1] - 39:1
object [5] - 16:16, 17:4, 19:2, 19:7, 29:11
objection [6] - 8:8, 23:19, 28:12, 29:6, 36:13, 37:10
obtained [1] - 31:3
obviously [1] - 27:15
occasion [1] - 34:14
OF [12] - 1:1, 1:18, 2:3, 2:6, 39:1, 39:3, 39:4, 40:1, 40:2, 40:3, 41:3, 41:4
office [3] - 11:5, 11:18, 42:16
official [1] - 39:10
ON [2] - 2:3, 2:6
one [15] - 6:17, 7:2, 7:4, 8:6, 8:15, 11:4, 12:13, 18:4, 18:6, 22:6, 24:21, 33:14, 34:23
one-half [1] - 33:14
ones [1] - 23:1
order [1] - 3:18
Ordyx [1] - 22:5
original [1] - 42:19
own [1] - 28:23
owners [2] - 9:13, 10:13

## P

P.A [4] - 1:12, 2:3, 2:7, 42:6
PACE [1] - 39:16
Pace [4] - 1:20, 40:4, 40:15, 42:23
page [2] - 30:6, 41:11
PAGE [13] - 2:16, 2:20, 41:1, 43:6, 43:7, 43:8, 43:9, 43:10, 43:11, 43:12, 43:13, 43:14, 43:15
pages [4] - 29:15, 29:18, 40:6, 41:8
paid [15] - 4:18, 5:6, 16:22, 17:2, 17:13, 18:11, 18:16, 19:12, 25:14, 31:22, 32:7, 33:13, 33:20
Palacios [9] - 2:21, 26:4, 27:1, 27:19,

28:2, 28:19, 28:23, 29:3, 30:2
paragraph [4] - 30:6, 30:12, 30:14
parties [2] - 40:9, 42:20
parties' [1] - 40:9
party [1] - 42:19
Paula [4] - 1:20, 40:4, 40:15, 42:23
PAULA [1] - 39:16
pay [6] - 4:17, 5:5, 5:11, 5:20, 30:15, 31:5
paying [1] - 9:5
payment [2] - 10:18, 14:15
per [4] - 16:25, 17:7, 30:24, 31:11
percent [21] - 5:4, 5:9, 6:2, 6:12, 6:16, 9:3, 9:10, 10:6, 12:15, 12:19, 12:23, 12:24, 13:4, 14:5, 14:13, 14:14, 19:11, 21:16, 33:19
percentage [7] - 4:24, 5:2, 5:20, 6:15, 10:16, 10:18, 14:15
perfect [1] - 4:15
perhaps [1] - 25:7
period [10] - 4:13, 4:14, 5:7, 6:1, 9:9, 17:21, 24:24, 25:3, 32:22, 33:18
personally [1] - 39:8
phone [1] - 25:18
Plaintiff [1] - 1:5
plaintiff [31] - 4:16, 5:6, 6:2, 6:6, 6:9, 6:11, 6:24, 7:9, 7:18, 10:25, 12:12, 16:22, 17:2, 17:22, 18:4, 18:10, 18:15, 18:22, 20:9, 22:13, 22:14, 22:25, 24:23, 25:2, 25:4, 25:15, 31:17, 32:25, 33:12, 33:20
PLAINTIFF [1] - 2:3
plaintiff's [2] - 20:21, 26:17
Plaintiff's [6] - 2:21, 2:23, 14:20, 14:25, 25:23, 26:2
plan [1] - 3:23
plus [7] - 4:19, 6:8, 17:15, 24:14, 24:19, 30:23, 32:9
point [4] - 6:17, 6:18, 6:19, 6:20

points [2] - 7:2, 8:16
policy [2] - 5:14, 5:21
portion [2] - 6:12, 20:23
possible [1] - 18:25
PRESENT [1] - 2:10
previous [1] - 23:10
print [1] - 11:16
problem [2] - 25:19, 34:7
proceed [1] - 42:19
produced [1] - 26:9
profits [1] - 32:15
provide [1] - 11:2
provided [2] - 26:16, 27:13
providing [1] - 27:14
Public [3] - 1:20, 39:17, 41:18
pursuant [1] - 1:21

## Q

questioned [1] - 35:22
questioning [3] - 3:18, 3:21, 3:23
questions [2] - 3:24, 36:19
quick [2] - 27:4, 35:19

## R

rate [6] - 4:17, 5:5, 17:17, 32:8, 33:1, 33:15
RE [1] - 42:9
read [5] - 30:8, 30:22, 34:22, 41:7, 43:3
reading [1] - 42:18
real [2] - 27:4, 35:18
realize [2] - 37:8, 37:12
reason [1] - 18:21
receipt [5] - 2:23, 12:2, 13:19, 14:1, 14:9
receipts [4] - 24:2, 25:2, 27:16, 32:12
received [2] - 27:1, 27:25
recess [3] - 13:15, 25:22, 27:7
Record [1] - 42:24
record [18] - 3:11, 3:14, 7:5, 7:25, 11:23, 13:12, 13:13, 13:18, 15:16, 15:21, 16:2, 17:25, 25:20,

27:4, 30:21, 35:14, 38:1, 40:7
records [6] - 21:17, 24:1, 24:8, 25:9, 25:14
redirect [1] - 35:18
REDIRECT [1] - 35:20
refer [1] - 4:14
reference [3] - 21:22, 23:18, 42:12
referring [1] - 18:10
reflect [1] - 38:2
reflected [1] - 14:8
regarding [10] - 6:1, 10:7, 10:24, 16:13, 20:9, 21:18, 22:17, 23:17, 28:24, 33:5
register [1] - 22:6
registers [1] - 12:18
related [1] - 3:25
relation [1] - 27:12
relative [2] - 40:8, 40:9
relevant [9] - 4:14, 5:7, 5:25, 9:9, 17:21, 24:24, 25:2, 32:22, 33:18
remember [2] - 11:4, 35:24
remove [2] - 5:21, 37:21
removed [3] - 34:16, 36:3, 36:5
repeat [1] - 32:18
rephrase [1] - 10:2
report [1] - 40:5
reporter [1] - 12:1
REPORTER [1] - 40:1
REPORTING [1] - 42:1
reports [1] - 27:17
representative [1] - 3:16
request [2] - 21:24, 22:24
requested [1] - 40:6
requesting [1] - 23:9
requirement [1] - 33:8
respect [9] - 5:9, 9:2, 13:18, 14:11, 16:23, 18:9, 21:14, 31:13, 33:12
response [1] - 20:10
responses [2] - 23:10, 27:16
rest [2] - 7:21, 32:11
restaurant [25] - 4:7, 5:13, 9:3, 13:22, 15:2, 15:6, 15:8, 16:20, 18:21, 20:5, 21:5, 21:7, 21:8, 21:11, 29:23, 31:3,

31:20, 32:15, 32:16, 32:22, 33:10, 33:11, 36:5, 36:23, 36:25
retail [2] - 3:20, 3:24
retaining [2] - 20:20, 20:25
review [1] - 40:6
ROBERTO [1] - 1:4
Roberto [7] - 4:4, 22:15, 22:19, 23:2, 23:4, 30:10, 30:23
rounded [1] - 15:3, 16:5
RPR [3] - 1:20, 40:4, 40:15

## S

sales [5] - 10:5, 13:6, 13:8, 13:10, 32:16
sample [1] - 11:5
seal [1] - 39:10
Security [2] - 21:1, 21:9
see [17] - 12:5, 12:8, 16:1, 19:21, 19:23, 20:16, 21:14, 21:16, 22:8, 22:9, 22:11, 24:9, 26:20, 27:5, 29:14, 29:20, 33:21
send [8] - 11:13, 23:12, 24:5, 28:7, 28:10, 28:15, 28:20, 28:23
sent [5] - 11:6, 11:11, 27:11, 28:5, 29:4
September [1] - 26:5
serve [1] - 32:22
served [2] - 10:25, 27:23
server [3] - 6:7, 12:3, 22:9
service [10] - 3:25, 5:19, 21:23, 23:18, 24:4, 25:10, 34:15, 34:25, 36:4, 36:24
services [2] - 2:11, 32:16
set [1] - 41:10
shall [2] - 42:18, 42:19
share [10] - 4:20, 6:12, 10:14, 10:17, 10:23, 10:24, 17:15, 19:11, 32:9, 35:15
shared [2] - 35:9, 35:10
shares [1] - 12:10
SHEET [1] - 43:1
shift [7] - 6:3, 6:4, 6:7,



6:10, 17:3, 17:22, 18:1

**shifts** [5] - 17:18, 18:5, 18:7, 32:4, 32:7

**short** [3] - 13:15, 25:22, 27:7

**SHORTHAND** [1] - 40:1

**show** [1] - 10:23

**shows** [2] - 10:18, 34:1

**signature** [1] - 42:14

**Signed** [1] - 43:22

**signed** [1] - 31:4

**signing** [1] - 42:18

**similarly** [1] - 1:4

**simple** [1] - 13:2

**Sincerely** [1] - 42:21

**single** [1] - 17:21

**situated** [1] - 1:4

**situation** [1] - 35:3

**six** [10] - 4:18, 17:2, 17:8, 17:11, 17:18, 17:22, 18:1, 18:5, 18:7, 30:25

**six-hour** [4] - 17:2, 17:18, 17:22, 18:7

**Social** [2] - 21:1, 21:9

**sometimes** [2] - 4:14, 6:6

**sorry** [4] - 15:18, 17:6, 19:17, 31:25

**SOUTHERN** [1] - 1:1

**SS** [2] - 40:3, 41:3

**state** [1] - 3:11

**State** [3] - 1:21, 39:17, 41:19

**STATE** [3] - 39:3, 40:2, 41:3

**STATES** [1] - 1:1

**stenographic** [1] - 40:7

**stenographically** [1] - 40:5

**stick** [1] - 3:20

**stipulated** [1] - 10:16

**stop** [2] - 11:20, 11:22

**Street** [3] - 1:13, 2:4, 42:1

**styled** [1] - 42:12

**subscribed** [1] - 41:16

**subtracted** [1] - 16:6

**subtracts** [1] - 13:23

**suggest** [1] - 42:15

**suitable** [1] - 42:16

**Suite** [3] - 2:8, 42:2, 42:7

**supplement** [1] - 23:10

**suppose** [1] - 37:19

**sworn** [2] - 3:4, 39:9

**Sworn** [1] - 41:16

**system** [3] - 12:18, 21:25, 22:6

**systems** [1] - 23:17

## T

**table** [1] - 20:2

**tables** [1] - 10:24, 22:19

**tax** [7] - 13:5, 13:6, 13:9, 13:10, 13:20, 13:24, 21:8

**taxes** [2] - 12:20, 21:6

**telephone** [1] - 42:16

**testified** [1] - 3:4

**testimony** [3] - 9:8, 21:5, 29:2

**THE** [23] - 2:3, 2:6, 7:11, 8:9, 13:7, 13:10, 15:18, 16:17, 19:3, 19:8, 19:17, 23:20, 26:18, 28:13, 29:7, 29:12, 30:8, 30:13, 30:16, 31:25, 32:18, 35:13, 36:14

**therefore** [2] - 5:19, 30:24

**Thereupon** [7] - 3:1, 13:15, 14:20, 25:22, 25:23, 27:7, 38:4

**three** [2] - 29:16

**tip** [10] - 19:15, 19:20, 19:24, 21:16, 24:4, 25:10, 26:8, 28:25, 37:14, 37:15

**tipped** [1] - 31:11

**tips** [9] - 10:14, 20:6, 20:21, 21:22, 23:18, 24:19, 30:23, 31:12

**TO** [1] - 42:5

**today** [5] - 3:18, 3:22, 3:23, 26:10, 36:18

**together** [1] - 6:10

**took** [3] - 8:2, 15:16, 42:19

**top** [1] - 22:11

**total** [10] - 6:22, 9:5, 10:5, 12:4, 12:6, 13:19, 24:17, 33:6, 33:7, 34:1

**transcribed** [1] - 42:13

**transcript** [7] - 38:2, 40:6, 40:6, 41:8, 42:13, 42:19, 43:3

**translating** [1] - 2:10

**tried** [1] - 35:4

**true** [4] - 4:6, 17:2, 40:7, 41:9

**try** [2] - 9:19, 10:1

**trying** [2] - 9:23, 37:6

**two** [5] - 8:5, 8:14, 8:16, 29:16, 29:17

**two-and-a-half** [1] - 8:16

**type** [1] - 15:17

**typed** [4] - 7:24, 8:1, 15:15, 16:3

**types** [3] - 21:20, 21:21, 24:8

**typing** [3] - 7:7, 15:22, 15:23

## U

**U.S.C.216(b** [1] - 1:4

**under** [5] - 1:4, 36:18, 36:19, 37:9, 42:13

**underneath** [1] - 19:23

**undersigned** [1] - 39:7

**understood** [2] - 36:17, 37:13

**unhappy** [2] - 5:19, 36:23

**UNITED** [1] - 1:1

**up** [3] - 15:3, 16:5, 29:22

## V

**VALERA** [1] - 1:8

**voucher** [8] - 4:21, 4:23, 10:17, 10:18, 19:22, 24:14, 24:15, 33:25

**vouchers** [5] - 10:15, 10:24, 24:22, 25:3, 25:8

**vs** [1] - 1:6

## W

**wage** [12] - 16:23, 27:13, 27:24, 28:24, 31:7, 31:9, 31:10, 33:1, 33:6, 33:7, 33:15

**Wage** [2] - 26:7, 29:19

**wages** [3] - 31:5, 31:18, 32:11

**waiter** [6] - 4:8, 6:4, 6:17, 8:22, 14:12, 16:10

**waiters** [8] - 8:5, 8:14, 9:6, 9:9, 10:9, 10:13, 10:15, 31:2

**waiting** [1] - 27:15

**waitresses** [1] - 31:2

**waived** [1] - 42:18

**week** [3] - 18:4, 18:6, 32:3

**West** [1] - 42:1

**whole** [2] - 30:11, 30:13

**withdraw** [1] - 32:20

**withheld** [1] - 21:6

**withhold** [2] - 21:8, 21:12

**withholding** [1] - 21:8

**withholdings** [2] - 21:1, 21:12

**WITNESS** [12] - 8:9, 13:7, 16:17, 19:3, 19:8, 23:20, 26:18, 28:13, 29:7, 29:12, 36:14, 39:10

**witness** [4] - 3:3, 7:5, 12:1, 14:23

**word** [2] - 25:10, 34:20

**write** [1] - 19:24

## Y

**YOURSELF** [1] - 42:12

## Z

**ZIDELL** [2] - 1:12, 2:3



**JEANNIE REPORTING (305) 577-1705**